THE PEOPLE ex rel. Patrick J. Carr, County Collector, Appellee, vs. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellant.

*Opinion filed June 16, 1926.*

1. TAXES—*county clerk may add a reasonable amount for loss and cost of collection.* For the purpose of insuring the necessary money in the treasury at the proper time, it is within the power, and it is the duty, of the county clerk in extending taxes to add a reasonable amount for loss and cost of collection where such has not been added by the taxing body; and there is no inflexible rule as to what percentage may be added but it should be small in proportion to the tax, and whatever appears to be necessary will constitute a valid levy unless there is a manifest abuse of discretion on the part of the taxing body or the county clerk.

2. SAME—*courts will not interfere with discretionary action of public authorities.* Courts will not interfere with the exercise of sound business judgment on the part of public authorities and will interfere only to prevent an abuse of discretion.

3. SAME—*what are proper items of loss and cost of collection.* In levying or extending an amount for loss and cost of collection, "real estate forfeited," "judgments refused" and cases "pending and appealed" are not proper items to be considered, but "real estate error" and "town collector's fees" are proper items, as is also "personal property delinquent," provided legal means have been exhausted in attempting to collect.

4. SAME—*collector must be diligent in collecting personal property taxes.* The fact that the item of uncollected delinquent personal property tax may be considered in estimating a levy for loss and cost does not excuse a want of diligence on the part of the county collector or State's attorney in collecting personal property taxes, as it is important that an effort be made to collect these taxes in order that the constitutional provision for equality in taxation may be more nearly realized.

5. SAME—*when item of "personal property delinquent" cannot be considered in a levy for loss and cost.* As delinquent personal property taxes are a personal liability, which can be collected, under the statute, in an action of debt, where no attempt is made to collect such taxes in accordance with the provision of the statute they cannot be considered in levying an amount for loss and cost of collection, as in such case they must be regarded as being still

in process of collection; and where there is no showing as to what amount of such taxes is uncollectible, an attempted levy for loss of uncollected personal property taxes is an arbitrary exercise of the taxing power and an abuse of discretion.

6. SAME—*when a driveway and maintenance tax is subject to limitation for corporate purposes of village.* A driveway and maintenance tax levied by a village under the act of June 22, 1917, for the maintenance of a portion of a boulevard lying within the corporate limits of the village, is for a village purpose and must be included within the limitation for corporate purposes although it is to be used by a park district and although the act under which the tax was levied provides that it is not subject to scaling, and where the village has levied the full amount for corporate purposes an objection to the driveway and maintenance tax is good.

STONE, C. J., dissenting.

DEYOUNG, J., took no part.

APPEAL from the County Court of Cook county; the Hon. EDMUND K. JARECKI, Judge, presiding.

BRUNDAGE, LANDON, HOLT & BOORD, (ROBERT N. HOLT, of counsel,) for appellant.

ROBERT E. CROWE, State's Attorney, and WILLIAM H. DUVAL, (FRANCIS X. BUSCH, Corporation Counsel, LEON HORNSTEIN, WILLIAM J. GRACE, W. W. DEARMOND, and HAYDEN N. BELL, of counsel,) for appellee.

Per CURIAM: Appellant seeks a review of a judgment for the sale of its property for delinquent taxes, entered on the application of the county collector of Cook county. The taxes objected to are those of the city of Chicago, the county of Cook, the Sanitary District of Chicago, the South Park District and the driveway and maintenance tax extended by the village of Oak Park. The specific objection to most of these taxes is that too large an amount was levied under the item of "loss and cost."

The objection concerning the city of Chicago tax relates to bonds and interest. The city council levied for bonds and interest the sum of $9,672,415.48. Of this the item for loss

and cost amounted to $708,235.28, or 7.41 per cent of the total levy made for bonds and interest, including loss and cost. The rate extended on the taxable property of the city for bonds and interest, including loss and cost, was fifty-four cents plus on each $100 valuation. Appellant contends that this is two cents plus more than was necessary to raise a reasonable amount for loss and cost. The entire city tax extended was at the rate of $2.86 per $100, and appellant contends that $2.84 is sufficient to meet all items of expense, including the loss and cost item on the bonds and interest account. It was stipulated that the same general items of loss and cost enter into the taxes for the city of Chicago, the county of Cook and the sanitary district.

It is within the power and duty of the county clerk in extending taxes to add a reasonable amount for loss and cost, where such has not been added by the taxing body. Various amounts have been approved. No hard and fast rule can be laid down as to any percentage which may be extended. (*Baltimore and Ohio Southwestern Railroad Co. v. People,* 200 Ill. 541; *Chicago and Alton Railroad Co. v. Baldridge,* 177 id. 229.) Whatever is shown to be necessary may be levied to cover all proper items of loss and cost of collection. The amount levied for that purpose constitutes a lawful levy unless there is a manifest abuse of discretion on the part of the taxing body or the county clerk. (*People* v. *Wabash Railway Co.* 296 Ill. 527.) The purpose of a levy for loss and cost is to insure the necessary amount of money in the treasury at the proper time. (*Village of Hyde Park* v. *Ingalls,* 87 Ill. 11; *Edwards* v. *People,* 88 id. 340.) Courts will not interfere with the exercise of sound business judgment on the part of public authorities but will interfere to prevent an abuse of discretion.

The items which the evidence shows went into the loss and cost computation in the city of Chicago bonds and interest tax were: "Forfeited to the State," $29,485.75; "judgments refused," $32,007.97; "errors," $5843.59;

"pending and appealed," $205.74; "personal property un-
collected," $725,839.61. It was held in *People* v. *Sandberg
Co.* 282 Ill. 245, and *People* v. *Chicago, Burlington and
Quincy Railroad Co.* 290 id. 327, that "real estate for-
feited" does not represent a tax loss; that "judgments re-
fused" does not indicate a loss but an unauthorized tax;
that "pending and appealed" refers to taxes in process of
collection. It was there held that "real estate error," "per-
sonal property delinquent," and "town collector's fees" were
proper items to be considered by the clerk in determining
the loss and cost of collection.

The evidence in this case shows that on the bonds and
interest levy the town and county collector's commissions,
the county clerk's fees for extension, and items of loss as
shown by the record, aggregate $793,382.66. From this are
deducted collections of delinquent personal property taxes
of previous years and interest saved on bonds not issued,
referred to as "salvage," leaving the total item for loss and
cost of collection at $708,235.28. Deducting from this
the items herein referred to as "forfeited to the State,"
"judgments refused" and "pending and appealed," which
are clearly improper items to be considered and which
aggregate $61,699.46, the loss and cost to be considered
amounts to $646,535.82. The objection of the appellant
is, that not only is the sum of $61,699.46 improper to be
considered as an item of loss, but that the item of "uncol-
lected delinquent personal property tax" is not only un-
authorized by law, but if authorized is entirely too high.
The record shows that loss and cost of collecting taxes for
five years, 1919 to 1923, inclusive, after deducting collec-
tions of delinquent personal property taxes, amounted to a
net loss of approximately 5 per cent in 1919, 5.5 per cent
in 1920, 8.5 per cent in 1921, 7.8 per cent in 1922 and
8.6 per cent in 1923. An examination of the record of
personal property taxes uncollected for those years shows
a steady increase. The statute gave to the county board

power, at any time, to institute suit in an action of debt, in the name of the People of the State of Illinois, in any court of competent jurisdiction, against any person, firm or corporation for the recovery of any personal property tax due from such person, firm or corporation. (Smith's Stat. chap. 120, sec. 230.) The evidence introduced by objector tends to show that but little diligence has been used in the matter of collecting delinquent personal property taxes. It is well known that the collection of such taxes, by reason of change of residence of tax-payers, should receive early and diligent attention. It was shown by the witness Gahan, from the county treasurer's office, that proceedings to collect delinquent personal property taxes for the years 1921 and 1922 were not turned over to the State's attorney's office for collection until in the year 1925, and that the 1923 delinquents were not turned over to the State's attorney's office for suit until in June, 1925. It seems evident from this proof that if greater diligence were shown a much larger recovery of delinquent personal property taxes would be had. The total uncollected personal property taxes for the city of Chicago for the year 1923 amounted to $3,731,823.19, which was over 31 per cent of the total personal property taxes extended. On the other hand, the evidence shows that during the year 1923 but $44,462.62 of such delinquent taxes was collected, and that in 1920 slightly over $56,000 represents the highest collection of delinquent personal property taxes secured during the five years under consideration. It is important that an effort be made to collect these taxes in order that the constitutional purpose and provision of equality in taxation may be more nearly realized. An indifferent administration of this duty on the part of the county collector or county board may readily give rise to a practice on the part of unscrupulous officials, should those offices be filled by such, of sacrificing the public taxes as a favor, to be exchanged for political advantage.

A delinquent personal property tax is a personal liability, which can be collected in an action of debt. (*Ottawa Gas Light Co.* v. *People,* 138 Ill. 336; *People* v. *Ballans,* 294 id. 551.) As long as no attempt has been made to collect it in accordance with the provision of the statute it does not differ in principle from real estate taxes "forfeited to State" or "pending and appealed," and it cannot be considered as lost but must still be considered as in process of collection. While delinquent personal property tax has been held to be a proper item to consider under the head of loss in the cases cited *supra,* it can only be so considered when legal means to collect it have been exhausted or the evidence shall otherwise show that there is little probability of its collection. In *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 319 Ill. 415, (a case not here in point but one in which an analogous principle was involved,) it was held that while this court has recognized the necessity for an assessment by a town of a small amount for contingent or miscellaneous expenses, such levy must be a very small proportion of the entire tax. In *People* v. *Wabash Railway Co.* 314 Ill. 388, it was held that while an inconsiderable amount may be levied for a town under the general designation "contingent and general expenses" the courts can approve such general tax levies only when they are for a small amount as compared with the entire levy. In *People* v. *Millard,* 307 Ill. 556, the levy for miscellaneous purposes was slightly less than 10 per cent of the entire tax levy, and it was held void.

Counsel representing the city of Chicago argue that that is a matter not in the control of the city, and that all the city can do is to levy the item "loss and cost" in accordance with what the facts show concerning the collection and failure to collect personal property taxes, and that while there may be substantial reason to believe that a greater amount of personal property taxes could have been collected had diligence been used, yet the city council could but take the

facts as they existed; that the taxes for bonds and interest cannot be scaled and are not within the limitations prescribed by law; that a definite sum of money must be had each year for the payment of bonds and interest; that it is the duty of the taxing body to see that that amount is in the treasury at the time it is due; that the municipality is required to do without taxes for corporate purposes which the law does not permit it to raise or which by loss or scaling it does not receive, but such cannot be said of taxes for bonds and interest; that the actual amount must be raised and put into the treasury else the credit of the municipality will be greatly damaged, to the great loss of the tax-payers in the matter of sale of bonds for improvements. While there is force in this argument, much of the evil could be remedied if the several taxing bodies, together with the people of the community, would insist that the parties charged with the collection of the taxes fulfill their duties in the premises. It would be manifestly unjust and in violation of the constitutional provision for equality of taxation to allow a portion of the citizens to escape the payment of the just taxes and then assess them under the head of loss against real property and against the personal property of the honest citizens who make no attempt to evade taxation. Under the evidence in this case the attempted levy for loss of uncollected personal property taxes, where the evidence shows a dereliction of duty on the part of those charged with the collection of the taxes and that no attempt has been made to collect the delinquent personal property tax, and there is no evidence in the record showing what proportion of such delinquent tax, if any, is uncollectible, must be held to be such an arbitrary exercise of the taxing power as to amount to abuse of discretion. Appellant in its brief does not object to the levy of $320,588.06 or an allowance of 5 per cent for loss and cost, and the tax for loss and cost will therefore be sustained to that extent.

The county clerk extended the county taxes at the rate of fifty-eight cents on each $100. The total levy by the county board for all county purposes was $10,264,133. It is stipulated that the same elements entered into the loss and cost levy for the county taxes as in the city taxes. The county clerk added 9 per cent for loss and cost as to a number of items. The item of "personal property taxes uncollected" under the county tax for 1923 was $867,873.72. Under the stipulation it does not become necessary to go into the figures pertaining to the items which make up the loss and cost tax, but an allowance of 5 per cent will likewise be made for loss and cost.

It was stipulated as to the Sanitary District of Chicago taxes that the same elements entered into the tax for loss and cost. By reference to the county clerk's rate sheet in evidence we find as to these taxes that he extended the full rate of eighteen cents on the $100 assessed valuation allowed by law for the general corporate purposes; that he determined a rate for bonds and interest, to which he added loss and cost, making the rate .270471 and making his total required rate .450471, which he extended as a rate of forty-six cents. As the rate of eighteen cents extended for general purposes was the limit that could be extended for that purpose under the law, then the rate of .28 out of the total rate of .46 was the real rate extended for bonds and interest, plus loss and cost of collection of the same. The amount extended for loss and cost was $430,434.

The levy ordinance of the sanitary district calls for the levy of $4,771,490 for bonds and interest and $8,017,793 for all other purposes. The equalized value of all taxable property in the district, according to the clerk's scale sheet, was $1,923,277,866. The objector agrees that a rate of twenty-six cents was justified. A tax extended at this rate would produce $5,000,522.45. Deducting from this the amount levied for bonds and interest, $4,771,490, leaves

$229,032.45, which is over 4.8 per cent of the amount levied for bonds and interest for loss and cost. As appellant does not object to this rate of .26 it will be taken as the basis for the extension of the tax for bonds and interest and loss and cost.

A different objection is raised as to the taxes of the South Park District. The total levy for the South Park District was $9,000,000. The district levied $1,570,206 to cover cost of collection and loss of the various taxes levied. It appears that the county clerk in extending this tax extended 6 per cent for loss and cost of collection for "police pension," 6 per cent for "employees' annuity and benefit" tax, and 6 per cent on "bonds and interest." No objection is made as to the allowance of 6 per cent for loss and cost as to these three taxes. These amounts, which were $9073, $16,500 and $185,750, respectively, left $1,358,898 of the original $1,570,206 levied for loss and cost by the park district. This remainder of $1,358,898 the clerk combined with the general purposes and the museum, making a total of $5,266,898 left for corporate purposes and museum and the loss and cost of collecting the same. It is appellant's contention that under the evidence, and even upon the face of the ordinance, a levy or an extension of $1,358,898 to collect a corporate and museum tax amounting to $3,908,-000 is so gross and excessive as to be fraudulent and illegal upon its very face. In order to produce this amount of $5,266,898 there would be a rate required amounting to .53 plus. These items being subject to scaling under the Juul law, the county clerk scaled the tax down to thirty cents, as required by law. This allowed a tax less than that levied for corporate and museum purposes and yielded nothing for loss and cost, and as the sole purpose of the levy for loss was to make up a deficiency in the tax for corporate and museum purposes its levy could in no way prejudicially affect appellant. There was no reversible error as to the South Park District tax.

The Oak Park driveway and maintenance tax was levied for the purpose of maintaining Austin boulevard, one-half of which is within the boundary of Oak Park, the boundary line of that village extending along the center line of said boulevard. This tax was levied under the provisions of the act of June 22, 1917. (Smith's Stat. 1925, chap. 105. par. 159.) The village had levied $1.33⅓ for corporate purposes, as limited by section 1 of article 8 of the Cities and Villages act. The act of June 22, 1917, under which the driveway and maintenance tax was levied, provided that it should not be subject to scaling under the Juul law. In *People* v. *Louisville and Nashville Railroad Co.* 307 Ill. 173, it was held that the statute providing that street and bridge taxes were not to be reduced under the Juul law did not authorize them to be levied outside the limitation of section 1 of article 8 of the Cities and Villages act but that they were required to be extended within the limitation of $1.33⅓. It was held in *People* v. *Illinois Central Railroad Co.* 307 Ill. 457, that a public benefit tax extended by a city is not outside the limitation of the Cities and Villages act. So in *People* v. *Chicago and Northwestern Railway Co.* 308 Ill. 54, it was held that the provision of the act preventing the scaling of such taxes did not take them outside the rate of $1.33⅓, as provided by section 1 of article 8. While this money was expended by the West Park District for the maintenance of Austin boulevard, the tax was levied by the village of Oak Park for the maintenance of the one-half of that boulevard lying within the corporate limits, and was therefore for a village purpose and subject to the statutory limitation referred to. The objection to this tax should have been sustained.

For the errors in allowing the illegal elements of loss and cost in the city, county and sanitary district taxes the judgment as to those taxes is reversed and the cause remanded, with directions to enter judgment in accordance

with the views herein expressed. As to the Oak Park drive-way and maintenance tax the judgment of the county court is reversed. As to the South Park district tax the judgment is affirmed.

*Reversed in part and remanded, with directions.*

Mr. CHIEF JUSTICE STONE, dissenting:

I cannot concur with the holding that taxes uncollected are to be considered as taxes in course of collection. The city has no control over the collection of delinquent taxes, but must at all events levy and collect taxes sufficient to meet bonds and interest thereon. Any other holding, in my opinion, greatly endangers the value of municipal bonds.

Mr. JUSTICE DEYOUNG took no part in this decision.