(No. 22129.—

THE PEOPLE *ex rel.* Joseph B. McDonough, County Collector, Appellee, *vs.* THE CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Appellant.

*Opinion filed December 22, 1933.*

Brundage, Landon & Holt, (Robert N. Holt, of counsel,) for appellant.

Thomas J. Courtney, State's Attorney, (Hayden N. Bell, William H. Sexton, and Leon Hornstein, of counsel,) for appellee.

Mr. Justice Herrick delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county overruling the objections of the appellant to the application of the appellee for an order of judgment and sale against the lands and property of the appellant returned delinquent for non-payment of taxes assessed for the year 1929.

The objections filed by the appellant challenged the correctness of the amounts extended by the county clerk of Cook county for "loss and cost" on mothers' pension, employees' annuity and benefit fund for Cook county, on bonds for the city of Chicago, the corporate fund, zoölogical park fund, bonds and interest of the Sanitary District of Chicago and the South Park bonds and interest, it being charged by the objections filed that the amount extended as a tax for loss and cost was grossly excessive.

It was stipulated by the parties in open court that the loss-and-cost ruling on the city of Chicago taxes should govern the rulings on the loss-and-cost items for the other municipalities. The hearing had in the county court upon this stipulation was confined to the item of loss and cost extended by the county clerk for the city of Chicago bonds. The assessed valuation of all classes of taxable property in the city of Chicago for the year 1929 was $3,694,498,706 and the rate extended was 1.99. The amount levied for bonds and interest of the city of Chicago was $13,562,000, and the rate extended upon this levy for bonds and interest was .367086. Of the amount of $13,562,000 designated as bonds and interest in the tax levy for the city only $12,-

329,000 was levied for bonds and interest, and the difference of $1,233,000 was added by the county clerk for loss and cost in making the extension. This amount of loss and cost so levied is slightly in excess of ten per cent of the original levy.

On the trial of the case the chief deputy comptroller of the city of Chicago testified as a witness. He testified that of the 1928 taxes his office had actually received from the county collector 82.07 per cent of the amount extended; that of the taxes levied and extended for the year 1929 there had been paid to his office 70.12 per cent, and that his office had not received 90 per cent of the 1928, 1929 or 1930 taxes. He and his predecessor had made up a schedule with reference to the collection of taxes received by his office from the county collector, commencing with the year 1899 down to and including the year 1927. This schedule was admitted in evidence. The record shows that the net loss and cost in collection of the taxes in those various years varied in a very appreciable extent. It is not necessary to set forth the percentages in this opinion, but in 1899 the net loss-and-cost collection item was .046, in 1900, .04, in 1923, .0863, and in 1926, .0839. It was developed, however, in the testimony of this witness that in making up the schedule of loss and cost his opinion was based entirely upon the amounts of money actually received by his office from the county collector for the various years about which he testified. He further stated that upon this premise the average for ten years immediately prior to the 1930 taxes was 9½ per cent for loss and cost; that the 1930 taxes had not been fully reported so as to serve as a basis for determining the amount of loss and cost in the 1930 taxes; that the amount extended for the 1929 taxes was based upon conditions that existed in 1926 and 1927, and that it would require a 90 per cent collection of the taxes to meet the obligations of the city. He admitted that in making up this table he calculated the

city and school taxes together; that he could not tell the amount of forfeited property taxes or what objections were sustained to taxes for the city and for schools for that year; that he did not know what amount of taxes was still in process of collection for the two different years.

There were offered in evidence reports made by the county collector to the city comptroller covering the taxes for the year 1926, the year 1927, and other years. The report for the year 1926 shows a total tax extended of $115,-000,181.88, and "losses" itemized as follows: Forfeited to State, $419,484.80; judgments refused, $786,603.43; errors, $42,893.65; pending, $981,728.50; referred to State's attorney, $707.95; personal property uncollected, $7,934,512.06; total losses, $10,165,930.39. Under the heading of "costs" there are itemized the town collect-or's commission, the county collector's commission and the county clerk's extension fee. These items of commissions and extension fees aggregated $1,117,199.12. For the year 1927 the total tax extended was $133,922,312.14. The items of "loss" reported were as follows: Forfeited to State, $509,444.84; judgments refused, $561,634.33; un-executed judgments, $52,850.54; errors, $37,682.07; sus-pended by injunction, $63,355.19; pending, $6,853,659.95; pending (railroad), $103,644.61; personal property uncol-lected, $10,046,716.19; total losses, $18,228,987.72. Un-der the heading of "costs" the commissions of the town collector and the county collector, the extension fee of the county clerk and the county clerk's quadrennial fee were itemized, making the total cost $1,279,126.38.

The chief deputy assessor of Cook county also testified on behalf of the county collector. He testified that he was acquainted with personal property assessments as they are made in the assessment books. He took the year 1930 as an example of the collectibility of personal property taxes for that year and other years, and stated that in his opinion 35 per cent of the 1930 personal property taxes was un-

collectible; that 25 to 35 per cent was void on the ground that it was from assessments made against property that did not exist, against dead people, removed people and dissolved corporations, and that 25 per cent was void in its inception. He further testified that 10 per cent represented small items which theretofore had not been collected, and that no effort was made to collect them because the cost of collection would be more than the amount secured, $20 being considered too small to justify the expense of collecting. It would thus appear, taking the years 1926 and 1927 as the basis, that no effort was made to collect over $1,000,000 of personal property taxes levied each year, notwithstanding that such taxes are levied and extended in accordance with the law.

This court will take judicial notice of its own decisions. In the case of *People* v. *Chicago and Northwestern Railway Co.* 340 Ill. 102, the question of the validity of the taxes of the city of Chicago for the year 1927 was before this court and the court there held that the rate was excessive. The rate as originally extended on the basis of one-half of the full value was 1.85. Subsequently, in July of 1927 the legislature passed an act making the basis of assessment full value. The county clerk then extended the tax on a rate of 1.031393. There was, therefore, a large part of the taxes assessed in the year 1927 in the city of . Chicago invalid and for which judgment was properly refused. "Judgment refused" is not a "loss." Notwithstanding this decision no consideration of it was taken by the witness in arriving at the basis of the correct amount of loss and cost of collection for 1927.

A delinquent personal property tax differs from a delinquent real estate tax. There is no personal liability for a delinquent real estate tax, but there is a direct personal liability for a personal property tax properly levied and extended. A personal property tax can be collected by the usual collector's distress warrant, (Cahill's Stat. 1933,

chap. 120, sec. 137, par. 155, p. 2322, and sec. 181, par. 199, p. 2331; Smith's Stat. 1933, chap. 120, sec. 156, par. 144, p. 2375, and sec. 181, par. 169, p. 2381;) or an action in debt can be maintained against the tax-payer and a personal judgment recovered against him for the amount of the tax and costs; also, such delinquent personal property tax may be charged against and collected from the tax-payer's real estate. It is apparent that no effort has been made to collect over $1,000,000 of personal property taxes for the year 1929, and that all items of $20 personal property tax and under were disregarded, because it is said that the cost of collection would exceed the amount of the taxes recovered. What the basis is for this statement is not disclosed by the record. Whether it is based upon actual experience or is simply the conclusion of the witness is not revealed by the testimony. It is apparent that while this condition is permitted to exist the constitutional guaranty of equality in taxation is absolutely destroyed, and this practice should not be permitted to continue. There is an unjust and unfair discrimination against the tax-payer who voluntarily pays his taxes, be they less than $20 or a sum far exceeding that amount. We realize that all of the personal property taxes cannot be collected, yet the fact that no effort is made to collect more than $1,000,000 of personal property taxes in the city of Chicago each year is no justification for including and calculating that amount under the item of loss in extending a tax for loss and cost. It is proper to include such loss in a tax for loss if the item of personal property tax has not been collected after a *bona fide* effort has been made to collect the tax, but until a real effort is made to collect the tax it can not be considered under the head of "loss," the legal means to collect such tax not having been exhausted or in fact set in motion and no showing having been made that there is little likelihood of the tax being collected. *People* v. *Chicago and Northwestern Railway Co.* 322 Ill. 150.

This court has held that "real estate forfeited" does not represent a tax lost; that "real estate judgment refused" is not a loss but represents an unauthorized tax for which judgment has been denied; that taxes uncollected and classified as "pending and appealed" refer to taxes in process of collection and do not represent a tax lost. (*People* v. *Sandberg Co.* 282 Ill. 245.) Within the same class fall delinquent taxes classified as "unexecuted judgments," "suspended by injunction" and "referred to State's attorney;" also "uncollected personal property tax," in the absence of proof that the legal means to collect such tax has been unavailing or competent proof that there is small probability of the collection of such tax by legal process. The court will also take judicial notice that the whole structure of the tax assessment and the collection thereof for the year 1927 was attacked in the case of *Bistor* v. *McDonough,* 348 Ill. 624, and *People* v. *Cesar,* 349 id. 372, which cases were also before the Supreme Court of the United States, and that this litigation had the effect of delaying the payment of taxes assessed for the year 1927 and subsequent years in the city of Chicago until the termination of the litigation involved in the two last above cited cases.

The witness, in testifying as to the rate necessary to cover loss and cost, failed to take into consideration the pending and uncollected taxes for the years 1926 and 1927, which, as before shown, amounted to very large sums of money, and failed to take into consideration unexecuted judgments, which for the tax year 1927 amounted to $52,850.54. He also failed to take into consideration the collection of taxes suspended by injunction, amounting to $63,355.19, and the pending real estate taxes, which for the same year, including railroad taxes, amounted to $6,957,304.56. He also omitted to take into consideration what effort had been made, if any, to collect the personal property tax remaining uncollected in the sum of $10,-046,716.19, represented as a loss in the taxes of 1927.

In the item of "cost of collection" the controlling items are usually the commissions of the collecting officers, being the county collector and the town collector, and the county clerk's extension fee and the county clerk's quadrennial fee. The total of these fees for the year 1927 amounted to $1,279,126.38 and was paid at the source. None of these items of cost of collection were paid to the city of Chicago direct and by the city paid to the proper officers, but this total amount had been paid before the moneys were paid over to the city comptroller and was included as one of the expenses of collection. Nevertheless the witness failed to consider, in giving his testimony, that this amount had already been paid before any funds were paid to the city. The basis upon which the witness founded his opinion as to the percentage necessary to cover the items of loss and cost was not founded upon a proper statement of facts. Important items representing large amounts of money, which were not, in fact, either losses or costs, were treated by him in his evidence as items of loss and cost.

This court has always held that a tax levied to cover loss and cost of collection is proper, and likewise held that the amount of such item or the percentage of loss and cost to be carried in the tax rate must usually be levied at the discretion of the public officer extending the tax. The power to levy a tax is the power to destroy property, and such power must be exercised judiciously. While the property owner always has the burden of showing that the tax has been assessed either improperly or at too high a rate, yet it does not follow that actual fraud must be proved by the objecting tax-payer in a hearing before the court. The motives of the taxing body or of the officer extending the tax may be ever so honest, yet if the conclusion reached by him is based upon an improper conception of the law and the amount assessed and ascertained for an item such as loss and cost is unreasonable, this court will not hesitate to review the action of the officer extend-

ing the tax. No hard and fast rule can be laid down by this court as to what percentage can be added by the county clerk or body levying the tax to the tax rate for loss and cost, but we have always held that the levying of a tax to cover loss and cost of collection must be small in comparison to the entire tax levied. *People* v. *Chicago and Alton Railroad Co.* 324 Ill. 179; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 319 id. 415; *People* v. *Wabash Railway Co.* 314 id. 388; *People* v. *Millard,* 307 id. 556.

From the examination of the evidence in this record we are constrained to hold that the item extended for "loss and cost" and included in the levy for bonds and interest of the city of Chicago is excessive. The evidence shows that the assessed equalized value of all taxable property in the city of Chicago in 1929 was $3,694,498,706, the tax rate, which included the item of loss and cost, was .367086, and the amount necessary to pay bonds and interest was $12,329,000. By using the rate .355227 there would be produced a tax levy of $13,123,857, leaving an excess of $794,857 for loss and cost, which is more than six per cent of the amount in excess of the amount necessary to be raised to meet the bonds and interest of the city of Chicago. We hold that in this case a rate of .355227 is sufficient to raise a tax ample to pay the item of city of Chicago bonds and interest, including loss and cost. By extending the tax at the rate last named it will reduce the total rate for the city of Chicago to the extent of .02 on each $100 assessed valuation. The ruling here made will apply to the other taxes objected to, covered by the stipulation made between the parties.

The judgment is reversed and the cause is remanded, with directions to enter judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*