(No. 22842.
THE PEOPLE *ex rel.* Thomas D. Nash, County Collector, Appellant, *vs.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF MILWAUKEE, Appellee.

*Opinion filed June 14, 1935—Rehearing denied October 4, 1935.*

Wilson, J., dissenting.

Thomas J. Courtney, State's Attorney, and Louis H. Geiman, (Hayden N. Bell, Jacob Shamberg, Brendan Q. O'Brien, and Otho S. Fasig, of counsel,) for appellant.

Robert N. Holt, and Scott, MacLeish & Falk, (Homer H. Cooper, and Robert S. Cushman, of counsel,) for appellee.

Barnet Hodes, Richard S. Folsom, Elmer J. Whitty, James M. Slattery, and George A. Basta, (Joseph F. Grossman, of counsel,) for intervenors on petition for rehearing.

Mr. Justice Farthing delivered the opinion of the court:

The treasurer and *ex-officio* collector of Cook county made application for a judgment against and an order for the sale of the lands returned delinquent for non-payment of the 1931 general taxes. The Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, filed objections to the amounts extended by the county clerk for "loss and cost" for the city of Chicago, the city schools, the

South Park District, the forest preserve district and the Sanitary District of Chicago. The objections charged that the amount extended as a tax for loss and cost was grossly excessive. The objections were sustained in part, judgment was rendered for the portion of the taxes to which the objections were overruled, and the treasurer and *ex-officio* collector prosecutes this appeal.

It was stipulated by the parties that the loss-and-cost rulings on the city of Chicago taxes should govern the rulings on the loss-and-cost items for the other municipalities. The assessed valuation of all property in the city of Chicago for the year 1931 was $3,147,614,842, and the rate extended was 2.52. The amount levied for bonds and interest of the city of Chicago was $22,898,683, and the rate extended upon this levy was .727493 on each $100 of assessed valuation. Of this amount $20,608,816 was levied for bonds and interest, and the difference of $2,289,867 was added by the county clerk for loss and cost in making the extension. This amount of loss and cost is slightly in excess of eleven per cent of the original levy. The parties further stipulated that the evidence with respect to loss and cost in *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 354 Ill. 438, should be considered as evidence in the present case.

The chief deputy comptroller of the city of Chicago testified that of the 1928 taxes his office had actually received from the county collector eighty-two and seven-hundredths per cent of the amount extended; that of taxes levied and extended for the year 1929 there had been paid to his office seventy and twelve-hundredths per cent, and that his office had not received ninety per cent of the 1928, 1929 or 1930 taxes. A schedule prepared by him and his predecessor with reference to the collection of taxes received by his office from the county collector was admitted in evidence. The net loss and cost in the collection of the taxes for the twenty-nine years beginning with 1899 and ending with 1927, cov-

ered by the schedule, varied appreciably. In 1899 it was .046, in 1900, .04, in 1923, .0863, in 1926, .0839, and in 1927, .1416. In preparing this schedule the witness based his opinion upon the amounts of money actually received by his office from the county collector for the respective years. Upon this premise he stated the average percentage for loss and cost was nine and five-tenths for ten years immediately prior to the 1930 assessment; that the 1930 taxes had not been fully reported so as to serve as a basis for determining the amount of loss and cost therein; that the amount extended for the 1929 taxes was based upon conditions that existed in 1926 and 1927, and that it would require a ninety per cent collection to meet the obligations of the city. He further testified that in making up this table he calculated the city and school taxes together; that he could not tell the amount of forfeited property taxes or what objections were sustained to taxes for the city and for schools for that year, and that he did not know what amount of taxes was still in process of collection for the two different years.

There were offered in evidence reports made by the county collector to the city comptroller covering the taxes for the years 1921 to 1927, inclusive. The report for the year 1926 shows a total tax extended of $115,000,181.88 and "losses" itemized as follows: "Forfeited to State, $419,484.80; judgments refused, $786,603.43; errors, $42,893.65; pending, $981,728.50; referred to State's attorney, $707.95; personal property uncollected, $7,934,-512.06; total losses, $10,165;930.39. Under the heading of "costs" there are itemized the town collector's commission, the county collector's commission and the county clerk's extension fee. These items of commissions and extension fees aggregated $1,117,199.12. For the year 1927 the total tax extended was $133,922,312.14. The items of "loss" reported were as follows: Forfeited to State, $509,444.84; judgments refused, $561,634.33; unexecuted

judgments, $52,850.54; errors, $37,682.07; suspended by injunction, $63,355.19; pending, $6,853,659.95; pending (railroad), $103,644.61; personal property uncollected, $10,046,716.19; total losses, $18,228,987.72. Under the heading of "costs," the commissions of the town collector and the county collector, the extension fee of the county clerk and the county clerk's quadrennial fee were itemized, making the total cost $1,279,126.38.

The chief deputy assessor of Cook county in 1931, 1932 and a part of 1933 testified that he was acquainted with personal property assessments as they are made in the assessment books. Taking the year 1930 as an example of the collectibility of personal property taxes for that and other years, he expressed the opinion that thirty-five per cent of the 1930 personal property taxes was uncollectible; that from twenty-five to thirty-five per cent was void on the ground that it was from assessments made against non-existent property, dead people, removed people and dissolved corporations, and that twenty-five per cent was void in its inception. He further testified that ten per cent represented small items which theretofore had not been collected, and that no effort was made to collect them because the cost of collection would be more than the amount obtained, $20 being considered too small to justify the expense of collecting. From his testimony it appears that no effort was made to collect over $3,000,000 of personal property taxes levied for the years 1926 and 1927, notwithstanding that such taxes were levied and extended pursuant to statutory requirements.

In addition to the testimony given at the hearing in *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co. supra,* the objector called witnesses for the purpose of showing the proper allowance to be made for loss and cost of collection. From an investigation of the collector's warrant books for the years 1927 and 1928 made by these witnesses it appears that the total amount of

personal property taxes extended for the year 1927 was $42,124,774.81. The degree of diligence used in their collection is evidenced by the fact that of this amount $15,300,569.62 was uncollected on December 1, 1928. Prior to the day named, suits were instituted to collect $4,346,117.50 of the delinquent taxes. Judgments were rendered for $531,840.18 and refused for $3,814,277.32. The corresponding figures for the year 1928 are: Total tax extended, $40,037,084.65; total tax uncollected on February 1, 1931, $14,078,819.72; amount sued for, $5,099,937.13; amount of judgments, $1,037,047.80, and judgments refused, $4,062,889.33.

According to the testimony of a witness for the objector, suits for the recovery of personal property taxes amounting to less than $25 were not instituted, on the ground that the cost of collection would exceed the amount recovered. He testified further that where judgments were recovered upon personal property taxes, levies were not made.

The evidence with respect to the 1928 personal property tax collections in the township of Hyde Park is illustrative of the aggregate amount of unpaid personal property taxes under $25 and the lack of diligence employed to effect their collection. From the collector's personal property warrant books for that township it appears that nothing was paid on and no legal action was instituted to enforce the collection of 31,854 items under $25. These items represent $549,625.35 in personal property taxes out of a total extension of $3,494,388.51, or more than fifteen per cent of the personal property taxes extended in that township for the year 1928. The record also discloses that few suits were instituted to recover such taxes where the amount involved was between $50 and $100, and that the number was even smaller where the amount was between $25 and $50. Approximately thirty items are listed on each page of the collector's warrant books for Hyde

Park. On 252 pages of these books there were no entries, irrespective of the amount of the tax, indicating either the payment of the tax or the institution of a suit therefor.

Another witness, for sixteen years the chief book-keeper in the county treasurer's office, made an analysis of the uncollected 1927 and 1928 taxes to determine what part of them could properly be deemed a loss. In making these computations as to loss and cost he took the total extension of real estate and personal property taxes for the respective years within the city of Chicago, deducted the total payments and thereby ascertained the amount of uncollected taxes. He then excluded the amount of taxes represented by real estate judgments refused, forfeitures, unexecuted judgments, taxes suspended by injunction, pending real estate and railroad taxes, uncollected personal property items of $25 and less, and judgments refused on personal property. With respect to the small items where no payments had been made and no suit instituted, he used the percentage (fifteen) determined by the investigator in connection with the examination of the collector's warrant books for Hyde Park and applied it to the entire city. In order to determine the proportion of the taxes represented by these items, and also by the personal property judgments refused, he used a fraction, namely, 315/500, which represents the ratio of the city and the school tax rate to the total rate extended against property within the city. In like manner the 315/500 factor was used to determine the city and school proportion of taxes represented by judgments refused on personal property. By the exclusion of the items mentioned and the allowance as loss and cost of the errors, fees and commissions and all taxes not collected for other reasons, he arrived at a percentage of .0463 as the actual loss and cost for the year 1927, and for the year 1928, .0410.

Although the collector did not challenge the accuracy of the objector's computations, he sought to justify the

loss and cost allowance of eleven per cent by evidence concerning the collection of the 1931 taxes. A deputy assessor testified that the assessed value of personal property and of capital stock for that year was $984,015,400, against which taxes of $70,791,692 were extended, and that $35,-569,158 had been collected by September 21, 1934. From his analysis it appears that subsequent to the extension of the taxes the issuance of personal property certificates of error effected an estimated reduction in taxes of $1,833,045. These certificates of error were issued (1) where the same property was assessed to more than one owner or in more than one location, or as both real and personal property; (2) where assessments had been made against property that did not exist, or which came into the county after the tax date, or which did not have a situs there for the purposes of taxation. Referring to suits brought to collect 1931 personal property taxes, the witness further testified that judgments were refused in cases of duplicate assessments where the estimated tax was $1,221,336, where there was a finding of no personal property, $542,866, and where judgments were entered for a tax upon a lower assessed valuation, $4,697,052. Certificates of revision issued jointly by the assessor and the board of appeals on real estate for 1931 resulted in an estimated tax reduction of $2,995,775. It also appears that a horizontal reduction by the county court in the assessed valuation of all buildings classified as small residences and two-flats reduced taxes by $6,079,860. The deputy assessor added that there were 9334 items between $100 and $1000 where the State's attorney could not find the names of the tax-payers in the current telephone directory, namely, for the year 1933 or 1934; 6142 items, also between $100 and $1000, where summonses were returned not found, and a large number where the post-office returned the notices as non-deliverable. These three classifications amounted to $5,296,810 in taxes. An item entitled "non-suits," of $2,014,935, appears under the

heading entitled "reduction through court action." The various items mentioned, and some minor items, amount to $24,681,958, and the collector claims this total as a loss and upon it bases his contention that eleven per cent is a proper allowance for loss and cost of collection. On cross-examination the witness testified that the foregoing data for the 1931 taxes could not have been available to the county clerk when he extended the taxes for that year; that he did not know how many judgments had been refused on the certificates of error issued, and that reductions are made effective by the judgment rather than by the certificate.

An auditor in the State's attorney's office testified that no effort was made to find the 9334 persons mentioned by the preceding witness except in the current telephone book or the certified list of corporations, and that a large number of persons who resided in apartment buildings and hotels did not have telephones in their own names. Similarly, the 6142 summonses returned "not found" were to tax-payers whose names were either in the telephone book or the list of corporations. Of the notices returned by the postal authorities, the witness stated that three-fourths of them represented taxes amounting to $25 or less. In many cases where a defendant would be entitled to a judgment refused, he stated that the prevailing practice was to enter a non-suit in order to simplify the keeping of court records.

The appellant contends that the county court erred in sustaining any part of the objections of the appellee and in refusing to enter judgment for the full amount of the extension for that purpose. To sustain the judgment the appellee maintains that the amount added for loss and cost must be very small in proportion to the tax levy, and that the percentage of .0463 allowed is justified by the evidence.

It is established not only that the taxing authorities have the power to add a reasonable amount for loss and cost of collection, but also that the amount of this item or

the percentage of loss and cost to be included in the tax rate usually rests in the discretion of the public officer extending the tax. Courts will interfere with the exercise of sound business judgment on the part of officers extending the tax only when necessary to prevent an abuse of discretion. (*People* v. *Chicago and Alton Railroad Co.* 324 Ill. 179; *People* v. *Chicago and Northwestern Railway Co.* 322 id. 150; *Edwards* v. *People,* 88 id. 340.) Although the burden of showing an abuse of discretion rests upon the objector, it is not essential that actual fraud be proved. Where the taxing body or the officer extending the tax reaches a conclusion based upon an improper conception of the law and the amount assessed and ascertained for an item such as loss and cost is unreasonable, the action of the officer extending the tax will be reviewed. (*People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 354 Ill. 438; *People* v. *Chicago and Alton Railroad Co. supra.*) Precise rules for determining the percentage to be added to the tax rate for loss and cost cannot be laid down. It is definitely settled, however, that the levying of a tax to cover loss and cost of collection must be small in proportion to the entire tax levied. *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co. supra; People* v. *Chicago and Alton Railroad Co. supra; People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 319 Ill. 415; *People* v. *Wabash Railway Co.* 314 id. 388; *People* v. *Millard,* 307 id. 556.

A delinquent personal property tax, in contradistinction to a delinquent real estate tax, is a direct personal liability. Several modes of collection are available. A personal property tax can be collected by the usual collector's distress warrant; (Cahill's Stat. 1933, pp. 2322, 2331; Smith's Stat. 1933, pp. 2375, 2381;) by an action of debt against the tax-payer for the amount of the tax and costs; (*People* v. *Chicago and Northwestern Railway Co.* 322 Ill. 150; *People* v. *Ballans,* 294 id. 551; *Ottawa Gas Light Co.* v.

*People*, 138 id. 336;) and by a charge against the tax-payer's real estate. Delinquent personal property taxes are properly included in a tax for loss following a *bona fide* attempt to collect them. But such taxes cannot be considered under the head of "loss" where the legal means of effecting collection have not been resorted to and the evidence fails to show that there is little likelihood of collection. *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 354 Ill. 438; *People* v. *Chicago and Northwestern Railway Co. supra.*

From the appellant's evidence it is clear that no effort has been made to collect that portion of the 1931 delinquent personal property taxes represented by items of $25 or under. From the record it appears that fifteen per cent of the extension for 1928 personal property taxes was represented by unpaid items of $25 or less. These items amount to $3,644,806.28 for 1927 and $3,495,534.37 for the year 1928. Evidence corroborating the appellant's assertion that the collection of such items would exceed the amount of taxes recovered is wanting. The constitutional guaranty of equality in taxation is violated, if not destroyed, as long as this condition obtains. An unjust and unfair discrimination results not only against those tax-payers who voluntarily pay their personal property taxes, whether they be for substantial sums or for less than $25, but also against the owners of real estate. A notable lack of diligence with respect to the collection of the personal property taxes for the years 1927 and 1928 is disclosed. Suits were filed to collect less than one-third of the delinquent personal property taxes for those years. It was conceded by the appellant that no distraints for such taxes were made, nor were any levies made on any of the judgments recovered. The amount of personal property taxes uncollected shows a steady annual increase. If greater diligence were used in the matter of their collection a considerably larger recovery of delinquent personal property taxes would undoubtedly

result. Manifestly, the dereliction of duty on the part of those charged with the collection of personal property taxes in the city of Chicago affords no justification for including the uncollected personal property taxes under the item of loss in extending a tax for loss and cost.

"Real estate forfeited" does not represent a tax loss; "real estate judgment refused" is not a loss but represents an unauthorized tax for which judgment has been denied; and taxes uncollected, and classified as "pending and appealed," refer to taxes in process of collection and do not represent a tax loss. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327; *People* v. *Sandberg Co.* 282 id. 245.) Delinquent taxes classified as "unexecuted judgments," "suspended by injunction," "referred to State's attorney" and "uncollected personal property tax," in the absence of proof that the legal means to collect such tax has been unavailing or that there is small probability of its collection by legal process, fall within the same class. *People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 354 Ill. 438.

The appellant concedes that judgments refused, owing to illegal rates, do not represent a loss, but argues that judgments refused for real and personal property taxes owing to illegal assessments do represent a loss. No authority is offered in support of this argument and we have found none. Judgments refused, whether based upon an illegal rate or an illegal assessment, represent an illegal tax and do not constitute proper allowances for loss and cost.

The evidence discloses that the item extended for "loss and cost" and included in the levy for bonds and interest of the city of Chicago is excessive. The city comptroller predicated his loss and cost figures on the difference between net extensions and net collections for the city of Chicago and the city schools without making any allowance for forfeitures, real estate judgments refused, real estate and railroad taxes pending and appealed, and taxes sus-

pended by injunction, none of which is a proper item to be included in loss and cost. The appellant directs our attention, however, to the evidence introduced by him with respect to the collection of the 1931 taxes. Items totaling $24,681,958 are scrutinized and claimed as a loss despite the fact that such evidence could not have been available at the time of making the extension for loss and cost. Of the items comprising this amount few are proper and afford but slight assistance in the determination of a proper loss and cost allowance. Personal property certificates of error, for example, do not cancel a tax. By the statute (Cahill's Stat. 1933, p. 2368; Smith's Stat. 1933, p. 2422;) such certificates are "evidence," and a tax reduction, to be effective, must be made through a judgment refused. Whether the certificates in question have been used in court or served as the basis of judgments refused does not appear. Real estate reductions by certificates of revision reduce the amount of taxes for which the collector has a warrant. Such certificates do not represent money that the collector was authorized to receive but failed to collect, and cannot, therefore, be treated as a loss. The substantial reduction in the assessment of certain buildings by order of the county court is analogous to a judgment refused. The appellant's evidence with respect to the items referring to personal property taxes abundantly shows that due diligence was not employed in attempts to effect collection. Judgments on lowered valuations, also claimed as a loss, do not differ essentially from judgments refused. It necessarily follows that the appellant's contention that eleven per cent is a proper allowance for loss and cost can not be sustained. On the other hand, the evidence adduced by the appellee discloses a comprehensive investigation and a careful statistical analysis of the tax collections in 1927 and 1928—the last years where the collections were sufficiently complete to afford a basis for the proper allowance or loss and cost. Its computations showing the actual loss

and cost for the years 1927 and 1928 as .0463 and .0410, respectively, are in substantial conformity with the decisions of this court. The trial court was fully warranted in accepting the percentage of .0463 as sufficient to cover the item of loss and cost of collection of the tax extended for the city of Chicago bonds and interest for 1931.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.