(Nos. 24035, 24036, 24038.—

THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellant, *vs.* RICHARD H. SCHWEITZER, Appellee.—THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellant, *vs.* FLORENCE E. MENEFEE, Appellee.—THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellant, *vs.* CECIL BARNES, Appellee.

*Opinion filed June 11, 1937—Rehearing denied, October 6, 1937.*

THOMAS J. COURTNEY, State's Attorney, BARNET HODES, Corporation Counsel, WILLIAM T. CRILLY, MANUEL E. COWEN, JACOB SHAMBERG, JOSEPH F. GROSSMAN, OTHO S. FASIG, NORMAN N. EIGER, RICHARD S. FOLSOM, FRANK S. RIGHEIMER, RALPH CONDEE, ALBERT FINK, ERNST BUEHLER, LAWRENCE J. FENLON, EDMOND P. MALONEY, CHARLES CENTER CASE, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, and THOMAS M. THOMAS, of counsel,) for appellant.

SCOTT, MACLEISH & FALK, ADAMS, NELSON & WILLIAMSON, WINSTON, STRAWN & SHAW, RICHARD C. BECKETT, and ADELBERT BROWN, (ROBERT N. HOLT and ROBERT S. CUSHMAN, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The county court of Cook county sustained objections to all amounts in excess of .0463 or 4.63 per cent of loss and cost items in the 1934 levies of the county of Cook, the Forest Preserve District of Cook county, the Sanitary District of Chicago, the city of Chicago, the Board of Education of the city of Chicago, the Chicago Park District and the former South Park District. Three separate appeals have been prosecuted by the People from the respective orders sustaining the objections and each is considered and disposed of in this opinion.

. On the trial below it was stipulated that the following percentages were allowed by the different municipal governments for loss and cost and for tax deficiencies: county of Cook, corporate fund, twelve per cent for "tax deficiency—loss and cost of collection;" highway, twelve per cent tax deficiency; bond and interest, ten per cent loss and cost. Forest Preserve District, corporate fund seventeen per cent tax deficiency; zoological fund, seventeen per cent loss and cost; bond and interest, twelve per cent loss and cost. Sanitary District of Chicago, bond and interest,

twelve per cent loss and cost, city of Chicago, corporate loss and cost, eleven per cent, bond and interest, eleven per cent loss and cost, Board of Education, all funds, six per cent for "loss and cost of collection, abatements, etc." Chicago Park District, corporate, seven per cent loss and cost; bond and interest, ten per cent loss and cost. Former South Park District, bond and interest, ten per cent loss and cost. None of such items was included in any levy, but appeared only as allowances in the budget appropriations of the several taxing bodies.

It was further stipulated that the evidence as to loss and cost extended for city of Chicago bonds, and the findings upon such evidence, shall govern and control the findings as to loss and cost of all the taxing bodies named, except that the issues raised by the Chicago Park District and the Sanitary District of Chicago as to certain validating acts, the question presented by the board of education under section 135½ of the School law, and the question presented by the city of Chicago under section 2a of article 7 of the Cities and Villages act, shall not be controlled or affected by the stipulation.

In cause No. 24035, (Schweitzer, appellee,) the principal issue relates to the amount properly allowable for loss and cost in the several taxing districts. It is agreed that it is narrowed to the question of whether or not a *bona fide* effort has been made to collect delinquent personal property taxes so as to justify the inclusion of such taxes as a loss. Other questions involving the proper method of calculation of allowable losses are also presented. The collector also contends that the allowance for loss and cost in the 1934 levies of the Chicago Park District was validated by the act of July 11, 1935, (Laws of 1935, p. 1051,) and that the allowance for loss and cost of the Sanitary District of Chicago was validated by the act of June 7, 1935, (Laws of 1935, p. 770.) In cause No. 24036, (Menefee, appellee,) the questions relate to the allowable losses under

section 135½ of the School law. In cause No. 24038, (Barnes, appellee,) the issue is whether appropriations under section 2a of article 7 of the Cities and Villages act, (State Bar Stat. 1935, p. 354,) are governed by the same rules as regulate levies by taxing bodies under the general Revenue law.

In each cause the objector relies upon the decision of this court in *People* v. *Northwestern Mutual Life Ins. Co.* 361 Ill. 248. In that case this court upheld an order of the county court of Cook county sustaining objections to loss and cost allowances on the 1931 taxes in excess of 4.63 per cent. It appeared that the city comptroller predicated his loss and cost figure on the difference between net extensions and net collections for the city of Chicago and the city schools without making any allowance for forfeitures, real estate judgments refused, real estate and railroad taxes pending and appealed, and taxes suspended by injunction, none of which is a proper item to be included in the loss and cost and none of which is in the causes now before the court. The loss and cost item in the levy for bonds and interest of the city of Chicago was slightly in excess of eleven per cent and was based on the average per cent of uncollected taxes for ten years preceding the year 1930. It was shown there was a notable lack of diligence with respect to the collection of the personal property taxes for the years 1927 and 1928. No distraints for such taxes were made, nor were any levies made on any of the judgments recovered, and a steady annual increase of the amount of personal property taxes uncollected was disclosed. It also appeared there was a corresponding lack of diligence in collecting the 1931 personal property taxes. We held that such a condition results in an unjust and unfair discrimination against persons who voluntarily pay their personal taxes and against the owners of real estate, and that the constitutional guaranty of equality in taxation is violated, if not destroyed, as long as this condition obtains.

The present objectors claim that the county collector never attempted to collect unpaid personal property taxes by distraint and that such taxes were never charged upon real estate; that where judgments were recovered the payment thereof rested upon a purely voluntary basis; that no levies were made under any execution upon a personal property tax judgment, and that ninety-five per cent of delinquent personal property tax-payers was entirely undisturbed by any of the legal processes provided for collecting said taxes.

The collector here introduced testimony to show that if the loss and cost in the *Northwestern Mutual Life Ins. Co. case, supra,* had been based on actual collections up to 1936, in place of estimates at the time of levy, the rate for 1931 would be 9.23 on legal extensions, and 8.83 on gross extensions for that year, and that the total uncollectible taxes for 1931, including such loss and cost, would be 18.34; that for the year 1932 the taxes uncollected up to May 14, 1936, would represent an average loss and cost on legal extensions of 10.39, and that the total of uncollectible taxes, including such loss and cost, would be 19.50.

The testimony shows that for the years 1928 to 1934, the following percentages of taxes for those respective years remained uncollected up to May 14, 1936: For 1928, 10.44; for 1929, 16.35; for 1930, 22.33; for 1931, 24.33; for 1932, 30.95; for 1933, 31.18; for 1934, 36.90.

The objectors introduced a number of pages and items in the personal property warrant books of 1929 where no entries had been made indicating that any legal action had been taken on such items, amounting to $2,444,669. It is claimed the lack of entries shows that no action to collect any of such items had been taken. The testimony of the collector shows that the absence of entries in the warrant books was not an indication that no action had been taken; that entries were in fact not made until after something was paid on the judgment; that, prior to the year 1931,

comparatively few suits were filed for delinquent personal property taxes under $100 and that the State's attorney considered it impractical to institute suits for such taxes under $50. The objectors rely upon this testimony as showing a want of diligence in the taxing authorities, but it is to be observed that any want of diligence on the part of former officials does not tend to establish any dereliction or failure of present taxing officials, and there is no testimony to show that since the year 1931 there has been a failure to make reasonable efforts to .enforce the collection of delinquent taxes. The testimony on the part of the collector was, that of the 1931 delinquent personal property tax, $32,710,246, or almost fifty per cent of the entire levy, was collected by the State's attorney after it had been referred to his office. For the years 1931 to 1934, there were turned over by the collector to the State's attorney, for collection, delinquent personal property items as follows: In 1931, 718,000; in 1932, 896,000; in 1933, 834,000; in 1934, 800,000. An assistant State's attorney testified that the available courts could not possibly handle that number of cases and the maximum number which could be disposed of each year was approximately 40,000. The evidence discloses that when the collector is unable to locate a delinquent tax-payer by mail or telephone, a summons is issued and that a large number of summonses are returned because the tax-payer cannot be located. In all such instances, a search is made with the corporate manual, telephone book, automobile license record, and any other record from which the correct address may be procured. When the sheriff or bailiff has not been able to locate a delinquent, an *alias* summons is issued.

Executions are issued and delivered to the proper officer on all unsatisfied judgments remaining unpaid subsequent to demand upon the delinquent for payment. After repeated notices and threats of suit, the State's attorney's office brings suit upon as many of the smaller items of per-

sonal property taxes as time and available courts will permit. The testimony also shows that it would be necessary to add a force of more than a thousand employees or deputies to the present force in order to enforce payment of delinquent personal property taxes by collector's warrants, and that the expense of such an additional force would be in excess of the amounts which could be realized under the warrants. It is further to be noted that the claim of the objectors that no delinquent personal property taxes have been added to real estate, finds no support in the testimony. No witness so testified. The evidence further shows that, owing to the widespread financial depression, thousands of business concerns in Cook county were in bankruptcy, or insolvent; that uncollectible judgments were secured each year against them, and that the cost of furnishing indemnifying bonds to officers for levies upon such property would be prohibitive.

No hard and fast rule for determining the percentage to be allowed for loss and cost can be laid down. In *People v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 354 Ill. 438, decided in December, 1933, we upheld an allowance of over six per cent for loss and cost on 1929 taxes for bonds and interest of the city of Chicago. In *People v. Diversey Hotel Corp.* 364 Ill. 298, in an opinion rendered in October, 1936, a loss and cost item of twelve per cent on the 1933 corporate levy of the city of Chicago, was sustained. Studies for fixing rates for allowance of loss and cost, based upon the experience of previous years, are valuable only where conditions are the same or similar. The financial depression from which we are emerging was at its height in the latter part of 1932 and early in the year 1933. In March of the latter year, all the banks of the nation were closed by a moratorium. Conditions in 1927 and 1928, and years prior to the depression, are not fair tests of the proper loss and cost allowances for the year 1934. The fact that the methods theretofore provided by

law for the collection of delinquent taxes were inadequate and attempts to collect were futile, was recognized by the legislature in 1933, when it passed the act known as the Skarda act, for the enforcement of collection of taxes on forfeited real estate by receiverships; (Laws of 1933, p. 873;) the act of July 8, 1935, replacing the Skarda act, (Laws of 1935, p. 1166,) and the act of 1935 providing for payment of delinquent taxes in installments. Laws of 1935, p. 1168.

The amount of loss and cost allowable usually rests in the sound discretion of the taxing authorities. Courts will not interfere with the exercise of sound business judgment on the part of the officer extending the tax, unless it clearly appears that his discretionary powers have been abused. (*People* v. *110 South Dearborn Street Corp.* 363 Ill. 286; *People* v. *Westminster Building Corp.* 361 id. 153; *People* v. *New York, Chicago and St. Louis Railroad Co.* 353 id. 518; *People* v. *Baltimore and Ohio Southwestern Railway Co.* 353 id. 492.) The determination of whether there has been such an abuse of discretion as to justify the interference of the court depends largely on the facts of each case. Taxes are presumed to be just, and the burden rests upon the objector to sustain his objections to a particular tax. *People* v. *110 South Dearborn Street Corp. supra; People* v. *Westminster Building Corp. supra; People* v. *Chicago and Northwestern Railway Co.* 331 Ill. 544; *People* v. *Sandberg Co.* 277 id. 567.

The rate approved in the *Northwestern Mutual Life Ins. Co. case, supra,* is controlling only under the facts shown in that case. In the causes now before this court, the objections are predicated on the theory that no reasonable efforts have been made since the year 1931 to collect delinquent taxes. Objectors have failed to meet the burden of proof imposed upon them and there is no showing that the allowances are excessive. That being true, it is

unnecessary to consider the collector's claims as to the validating acts.

In cause No. 24036, it is contended that the allowance by the board of education of six per cent for "loss and cost of collection, abatements, etc." is void for indefiniteness. We have repeatedly held that appropriations by taxing bodies of money to be expended must separately specify each purpose of the appropriation. This is because the taxpayer is entitled to know how his money is to be used. (*People* v. *Wabash Railway Co.* 314 Ill. 388; *People* v. *Toledo, St. Louis and Western Railroad Co.* 265 id. 502.) The requirement is to prevent expenditures for a different purpose than the one designated by the appropriation. However, the general rule is subject to the qualification that specific itemization is not necessary so long as the general purpose designated informs the tax-payer of the objects for which his money is to be spent. (*People* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 359 Ill. 351.) The item here complained of was embraced in the appropriation but does not appear in the levy. Loss and cost allowances in a budget appropriation, not embraced in the levy, are not for money to be expended. The tax-payer gets his information as to the amount and the purpose for which the money is to be used, from the items appropriated and levied for expenditure. By a loss and cost appropriation, he is also informed that it is estimated a certain percentage of the taxes extended will be delayed in collection, absorbed in costs, or lost. The remainder, only, of the appropriation levy is to be expended. Loss and cost appropriations are merely balancing items for taxes which it is estimated the taxing bodies will not receive. An objector would derive no benefit from a particular itemization of the loss and cost items. What he is concerned with is how the money collected will be spent. Whether the uncollected money represents a loss, or whether the failure to collect arises from abatements or deferred collections, the

money absorbed in costs would neither change the character nor increase or decrease the amount of the money to be expended. The reason for requiring particularity in appropriations for expenditures does not obtain in loss and cost items. The objection should have been overruled.

In cause No. 24038, the annual appropriation ordinance of the city of Chicago estimated the receipts from the tax levy for the year 1934 for general corporate purposes at $31,925,386.22, and the levy was for the same amount. Loss and cost was estimated at $3,192,538.62, and the balance of $43,987,133.72 was appropriated for current expenses.

In the *Diversey Hotel Corp. case, supra,* we upheld a loss and cost appropriation of $4,800,000, which sum was taken in consideration with other items, including income, in arriving at the net amount to be levied. In that case, the estimate of the 1933 appropriation ordinance of available funds from taxes was $40,000,000, while the taxes actually extended were $31,744,603.80. The objector contends that this fact constitutes a fundamental difference between the *Diversey Hotel Corp. case* and this case. In that case, as in this, there was no levy made for loss and cost. The amount estimated in each case for that item was taken into consideration with other items, including income, in arriving at the net amount to be levied. The decision in the *Diversey case* was not based on any difference between the amount levied for the corporate fund in 1933 and the amount extended for that purpose. We said in that case, "Section 2a of article 7 of the Cities and Villages act not only authorizes but requires the action here taken. * * * The action of the city council would appear to have been strictly in accord with the provisions of this act." Section 1 of article 8 of the Cities and Villages act, (State Bar Stat. 1935, p. 358,) provides that the maximum amount of taxes which the city of Chicago is permitted by law to levy shall not exceed the estimated amount of taxes to be

levied for each such year as determined in accordance with the provisions of section 2a of article 7 of the act. The latter section provides that appropriations shall include an amount or amounts estimated to be sufficient to cover loss and cost, and abatements as extended upon the collector's books. The appropriation for loss and cost, being merely a balancing item and not embraced within the levy, we observe no fundamental difference between the *Diversey Hotel Corp. case* and this case.

The judgments of the county court are reversed, and each of the causes is remanded to that court, with directions to overrule the objections in each case.

*Reversed and remanded, with directions.*