(No. 11720.—Reversed in part and remanded.)

THE PEOPLE ex rel. Henry Stuckart, County Collector, Appellee, vs. THE N. J. SANDBERG COMPANY, Appellant.

*Opinion filed December 19, 1917—Rehearing denied Feb. 8, 1918.*

1. TAXES—*county tax for road and bridge purposes is subject to reduction.* Where it becomes necessary for the county clerk to reduce the county tax to the required rate, the tax levied by the county for road and bridge purposes should be included in the reduction.

2. SAME—*tax for mothers' pensions is included in aggregate of taxes certified for extension.* The tax for mothers' pensions is not subject to reduction, but it is an ordinary county tax and is a part of the aggregate of all the taxes certified to be extended.

3. SAME—*county tax item for loss and cost of collection is subject to reduction.* While a reasonable sum may be added to a tax levy for loss and cost of collection so as to produce the net amount desired, this authority cannot be exercised to extend the rate beyond the limit fixed by statute, but the loss and cost item is to be included in the minimum rate and is subject to reduction.

4. SAME—*tax to pay bonds and interest may be levied although not included in either appropriation or levy ordinance.* Under the constitutional provision requiring a municipal corporation, when incurring an indebtedness, to provide for a direct annual tax to pay the principal and interest, the county clerk is authorized, upon the filing of a certified copy of an ordinance for a bond issue for city improvements and for a direct annual tax sufficient to pay the bonds and interest, to use such ordinance, together with the annual levy ordinance, as the basis for extending the city tax, although the bond issue was voted for subsequent to the passage of the levy ordinance and appropriation bill and was not included in either of those ordinances.

5. SAME—*the county clerk can refer only to tax levy ordinance and bond ordinances in extending tax.* The tax levy ordinance and bond ordinances certified and filed in the county clerk's office by the city clerk are the only source of information to which the county clerk is authorized to go for the amount of money required to be raised by taxation, and in extending the tax he cannot consider other information derived from city officers or other sources.

6. SAME—*judgment for tax cannot be reversed because county clerk extends a proper amount by incorrect process.* The fact that the county clerk extended a tax for bonds and interest according to a schedule he received from the city comptroller instead of according to the tax levy ordinance filed with him is not ground for re-

versing a judgment for delinquent taxes, where the amount actually extended is less than the amount authorized in the levy ordinance.

7. Same—*when statute may be passed to cure defects in levy of taxes.* The legislature may pass an act to cure defects in the levy of taxes or other official acts when the defect consists in the failure to observe some requirement of the law without which the legislature might have authorized the act to be done, but such legislation is subject to the constitutional limitation that no person shall be deprived of life, liberty or property without due process of law.

8. Same—*act of May 3, 1917, to cure defects in levying sanitary district taxes, is valid.* The act of May 3, 1917, to cure defects in levying certain sanitary district taxes, is valid and effective to validate the taxes referred to, and the fact that the act excepts from its operation the taxes for the year 1915, which had been held invalid by the Supreme Court, does not render the act discriminatory, as such exception was proper.

9. Same—*court cannot waive penalty of one per cent per month to be included in judgment for tax.* The statutory penalty of one per cent per month to be included in a judgment for delinquent taxes cannot be waived by the trial court.

Appeal from the County Court of Cook county; the Hon. John H. Williams, Judge, presiding.

Landon & Holt, (Robert N. Holt, of counsel,) for appellant.

Maclay Hoyne, State's Attorney, (Samuel A. Ettelson, Corporation Counsel, Irwin N. Walker, Orville R. Seiter, Edmund D. Adcock, Ross C. Hall, Walter E. Beebe, Leon Hornstein, and Robert E. Gentzel, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

This appeal is from a judgment for the taxes of 1916 against the appellant's real estate in Cook county.

It is objected that the county tax was not properly scaled in accordance with the act of 1901, concerning the levy and extension of taxes, and its amendments. (Hurd's Stat. 1916, p. 2229.) The county levy ordinance levied $1,514,162.50

for the principal and interest of bonds, $244,334.50 for judgments, and for general purposes $5,172,962.50, which included $325,000 for loss and cost of collection of taxes levied for general county purposes. To raise the amount of the appropriation for general purposes required a rate of .4668 on the $100 valuation. Because of the excess of the taxes certified for extension in a part of the county over three per cent of the assessed valuation, it became the duty of the county clerk to reduce the rates in the manner required by section 2 of the act mentioned. In doing so he made no reduction in the county tax for the reason that he regarded the amounts included in the levy for roads and bridges, for mothers' pensions and for loss and cost of collection as not included in the minimum rate of forty-five cents below which the county tax in a county having the population of Cook county may not be reduced. The amounts levied for roads and bridges require a rate of .0188, that for mothers' pensions .0167 and that for loss and cost of collection .0292, and after deducting these rates from the .4668 there remained for the county's rate .4021. Since this was below the minimum rate the county clerk made no reduction. Adding to this rate those mentioned for roads and bridges, mothers' pensions and loss and cost, together with the rate required for bonds (.1494) and judgments (.0242) produced a rate of .6404, which was extended as sixty-five cents against the appellant's property. The county tax levied for road and bridge purposes was subject to reduction under the law. (*People* v. *Illinois Central Railroad Co.* 256 Ill. 332.) The appellee concedes this, but insists that the tax for mothers' pensions could not be included in the aggregate of taxes certified for extension, though it is included in the minimum rate of forty-five cents. It is true that it is not subject to reduction, (*People* v. *Cairo, Vincennes and Chicago Railway Co.* 266 Ill. 557; *People* v. *Chicago, Lake Shore and Eastern Railway Co.* 270 id. 477;) but it is an ordinary county tax and was not among those

which the statute excludes from consideration as a part of
the aggregate of all the taxes certified to be extended. The
excess above the rate of forty-five cents must, however, be
deducted from the other items of tax which are subject
to reduction. The loss and cost item is also to be included
in the minimum rate of forty-five cents, and the statute
does not exclude it from reduction. When it becomes
necessary to reduce the rates under section 2, the statute
requires all rates not expressly exempted to be reduced
proportionately. The county tax must be reduced, but, in
counties having a population of over 300,000, not below a
rate of forty-five cents. While a reasonable sum may be
added to a levy for loss and cost of collection so as to pro-
duce the net amount desired, this authority does not in-
crease the limit of the taxing power. A rate may not be
extended beyond the limit fixed by the statute. (*Baltimore
and Ohio Southwestern Railroad Co.* v. *People,* 200 Ill.
541.) The application of the statute without any saving
clause would reduce the levy far below the rate of forty-
five cents, but the statute says that the rate shall not be re-
duced below forty-five cents on the $100. This limit is the
extent of the tax which may be exacted, and the limit is
forty-five cents,—not forty-five cents and the loss and cost
of collection.

The clerk, in extending the tax, added ten per cent to
the amount levied for bonded indebtedness to cover the loss
and cost of collection, and the appellant objected to this
item as excessive. The court sustained the objection and
reduced the amount one-half. This was in accordance with
the evidence. The clerk in charge of tax extensions in the
county clerk's office presented a statement for the purpose
of showing loss and cost of collection for the years from
1912 to 1915, inclusive. It consisted of seven items. They
are, "Real estate forfeited," "Real estate judgment refused,"
"Real estate error," "Personal property delinquent," "Pend-
ing and appealed," "Increased interest on tax levy anticipa-

tion loan" and "Town collectors' fee for collection." "Real estate forfeited" does not represent a tax lost. "Real estate judgment refused" does not indicate a loss but an unauthorized tax. "Pending and appealed" refers to taxes in process of collection, and "Interest on anticipation warrants" is not a loss of taxes or any part of the cost of collection. The rate allowed by the court was sufficient to cover the remaining items in any of the years as to which evidence was introduced. The judgment in this respect was in accordance with the evidence.

It is objected by the appellant that the county board levied the full amount of the salaries of the State's attorney and his assistants without taking into consideration the amount to be realized from fees, fines and forfeitures, as required by law, (*People* v. *Jackson,* 272 Ill. 494,) and that it also made a levy for the salaries of the clerks of courts, treasurer, sheriff, coroner and recorder, which are payable only out of the fees of their offices. The levy ordinance, after reciting the appropriation ordinance, which made total corporate appropriations of $10,199,358.49, and the necessity of levying certain amounts for the payment of bonds and judgments, recited that the salaries of the clerks of all courts of record, treasurer, sheriff, coroner and recorder of deeds were payable, respectively, only out of the fees of the office actually collected. It then recited that certain appropriations were re-appropriations payable only out of unexpended cash balances of previous appropriations for the same purpose, and that other appropriations were payable out of the proceeds of certain bonds; that the appropriation of $325,000 for loss and cost of collection of taxes was a reasonable estimate of the loss and cost of collection necessary to be levied for general county purposes; that it was necessary to levy the further sum of $5,497,962.50, which included the sum of $325,000 aforesaid, "as the tax sufficient to produce the sum of $5,172,962.50 for general county purposes,—that is to say, for the purpose of meeting

such deficits in and balances of the remaining items (hereinafter referred to as deficit items) of said appropriation bill as are left over after application of other county assets and receipts as hereinafter provided." It was then recited that the salaries of the State's attorney and assistant State's attorneys appropriated for were payable out of a special fund of the State's attorney for the collection of fees, fines, forfeitures and penalties (hereinafter estimated at the sum of $28,128.81) to the extent that such special fund will permit, only the balance of said salaries, if any, to be paid by the county in accordance with the provisions of law in such case made and provided. Therefore it was resolved that there be levied a tax for the payment of principal and interest of bonds as specified, $1,514,162.50, a tax for the payment of judgments as specified, $244,334.98, "and a direct annual tax necessary, as aforesaid, as a tax sufficient to produce the sum of $5,172,962.50 for the purpose of meeting the aforesaid deficit items as hereinafter specified and defined of $5,497,962.50, making a total levy for all purposes of $7,256,459.98." The meaning of this resolution is that the appropriation for general county purposes was for the purpose of meeting the deficits in and balances of the items remaining, independent of the bonds, the judgments, the salaries of the clerks, treasurer, sheriff, coroner and recorder, and the appropriations mentioned which were payable from the unexpended cash balances of previous appropriations and the proceeds of bonds, and that the appropriation for the salaries of the State's attorney and assistant State's attorneys was only for the balance of those salaries, if any, after exhausting the fund derived from the State's attorney's collection of fees, fines, forfeitures and penalties. The rate for the county tax is properly arrived at by reducing it to forty-five cents, adding to this the rate for the payment of bonds and judgments and interest and reducing this sum by the amount which the ten per cent loss and cost item on bonds and judgments was excessive.

What has been said about the loss and cost item of the county tax for general purposes applies to the school tax. After reducing the rate for educational purposes in accordance with the law, it was raised to the minimum rate of $1.20, and to this was added six cents on the $100 for loss and cost of collection. One dollar and twenty cents was the limit of the amount which the public authorities were entitled to exact from the tax-payer for educational purposes, and the objection to the six cents was properly sustained.

For the same reason the court properly sustained the objection to the item for loss and cost of collection of the city tax for general corporate purposes, leaving the rate for that purpose at the limit of $1.10. The tax levy ordinance of the city of Chicago included $5,247,997.39 for payment of bonds, judgments and interest and loss and cost of collection, the amount of judgments being $358,000 and for loss and cost of collection $209,919.89. After the appropriation of this amount in the annual appropriation bill and the passage of the levy ordinance, two ordinances were passed by the city council providing for issues of bonds,— one for municipal street lighting and the other for bridge construction. These bonds were voted on at an election held on June 5, 1916, and approved, and copies of them were filed by the city clerk with the county clerk, who had them, together with the levy ordinance, as the basis for his extension of the city tax, the aggregate amount extended for bonds, interest and cost of collection being $5,495,163.05 instead of the amount mentioned in the tax levy ordinance. It is insisted this amount is excessive because it is greater than that required by the city's annual tax levy ordinance.

. Section 1 of article 8 of the Cities and Villages act, in providing the method by which the city council may levy and collect taxes, requires that it shall ascertain, annually, on or before the third Tuesday of September, the total amount of appropriations for all corporate purposes legally made and to be collected from the tax levy of that fiscal

year, and by ordinance levy the amount so ascertained upon all taxable property in the city as assessed and equalized for State and county purposes for the current year, and that a certified copy of such ordinance shall be filed with the county clerk, who shall ascertain the rate per cent which, upon the total valuation of such property, will produce the net income directed to be levied and to extend such tax upon the collector's book. Section 122 of the Revenue act requires the proper authorities of cities to certify to the county clerk, annually, on or before the second Tuesday of August, the amounts required to be raised by taxation. It is argued that the law contemplates but one levy ordinance in each year, and that provision for payment of the indebtedness of the city must be included in such ordinance.

The ordinance for the issue of bonds for municipal street lighting provided that "there shall be and is hereby levied, and there shall be collected, a direct annual tax upon all the taxable property in the city of Chicago sufficient to produce the sums for principal and interest, respectively, amounting to the totals set forth opposite same for each year named, such total sum being in each instance the amount to be levied for the year named in that line in the following schedule: For year of levy 1916, principal $200,000, interest $225,000, total $425,000," with a similar statement for each subsequent year to and including 1934, the amount for interest diminishing in each successive year. The ordinance for bridge construction bonds contained the same provision, except that the amounts were different. Section 12 of article 9 of the constitution provides that any municipal corporation incurring indebtedness shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. We have held that this provision of the constitution is self-executing and no supplemental legislation is necessary to

make it effective. (*City of East St. Louis* v. *People,* 124 Ill. 655; *People* v. *Day,* 277 id. 543.) The city council is authorized to borrow money and issue bonds, but no ordinance for the issue of bonds can become effective until approved by a majority of the voters at an election. Such an ordinance may be passed and an election for its approval held at any time that the city council may determine, but the city council must, before or at the time of incurring the indebtedness, provide for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due and the principal within twenty years. In *People* v. *Day, supra,* we held that the provision by a municipal corporation incurring a debt and issuing bonds therefor that an annual tax shall be levied sufficient to produce a specified sum, amounts to an appropriation of that sum for each year during the existence of the debt, and that the municipality may levy and collect the tax though not included in a general appropriation bill. The bonds in question were to be dated July 1, 1916, to bear four per cent interest, payable semi-annually, and to become due serially, beginning January 1, 1918, and continuing until January 1, 1936. It was the duty of the city council to levy and collect the tax so as to have the money ready to pay the interest and principal of the bonds as they mature, and in order to collect it before the payments due January 1, 1918, it was necessary to levy the tax in 1916. The necessity for these levies arose after the passage of the appropriation bill and after the passage of the levy ordinance on March 25, 1916. The amounts could not be included in either of those ordinances. The levies for the year 1916 were in accordance with the requirements of section 12 of article 9 of the constitution, and upon the filing with the clerk of certified copies of the ordinance it became his duty to extend the amounts levied. It was the duty of the clerk to make the extension of the city tax upon the annual levy ordinance and the two bond ordinances. He received from the city comptroller a letter

dated August 10, 1916, transmitting a schedule which the letter stated showed in revised form the tax levies made by the city council for the year 1916, for interest on the bonded indebtedness of the city and sinking funds for the twenty-year bonds then outstanding, and also for such bonds as would mature on January 1, 1918. The schedule contained a description of various series of bonds, with the rates of interest and amounts outstanding, a column headed "Levy of interest," with the amount opposite each series of bonds, and another column headed "Levy for sinking fund on twenty-year bonds or for bonds specifically due January 1, 1918," with an amount opposite the description of the various series of bonds. This statement included the bridge construction bonds, $270,000 principal and $204,000 interest, and the municipal street lighting bonds, principal $200,-000, interest $150,000. Certain deductions were made from the interest for a salvage in the amounts provided in the levies of 1914 and 1915 for interest payable in 1915. The footing of the schedule was for principal $3,493,707, for interest $1,726,697.91, for loss and cost of collecting $274,-758.14, total, $5,495,163.05,—the amount which was actually extended. This schedule the clerk used as a basis for extending the tax for bonds and interest. It was not such a document as the law authorizes the clerk to take into consideration in extending a tax. The duty of extension is ministerial, and consists in ascertaining the rate required to produce the amounts certified according to law and extending against all the taxable property the amounts produced by such rates. The tax levy ordinances certified and filed with him by the city clerk are the only source of information to which he is authorized to go for the amount of money required to be raised by taxation. He cannot consider other information derived from city officers or other sources. The amount certified by the annual levy ordinance for principal of bonds and interest on them was $4,680,077.50. The amount certified by the two bond

ordinances was $824,000, all three amounting to $5,508,-
077.50. This amount the county clerk was authorized to
extend. He did extend only $5,495,163.05. The process
by which he arrived at this amount was not legal, but the
result arrived at was within the legal limit and is more
favorable to the appellant than a strict compliance with the
law would have been. The judgment cannot be reversed
because the proper result was arrived at by an incorrect
process.

Objections were filed to the tax of the Sanitary District
of Chicago, among them, that no appropriations were made
for the year 1916; that no ordinance appropriating money
had been published; that the district had not appropriated
and applied its net earnings from water power and docks
to the purpose of paying the interest and principal of its
bonds to the extent that such earnings would suffice, and ·
that none of the ordinances providing for the issuing of
bonds was ever passed or published as provided by law.
The People moved to strike out the objections, but the court,
without ruling on this motion, suggested that the proof be
made. Thereupon the appellant offered to sustain its ob-
jections by proof, but the attorney for the appellee objected
to the evidence as not material, and the court sustained the
objection on the ground that a certain act of the legislature
approved and in force May 3, 1917, (Laws of 1917, p. 394,)
made the levy of the tax valid against all the objections.
The appellant insists that the act of May 3 is unconstitu-
tional and that it should have been allowed to sustain its
objections by proof. The appellee insists that no consti-
tutional question was raised in the trial court or is raised
by the assignments of error. The appellant's counsel ex-
pressly stated that his position was that the act was void,
though he did not claim that it was not properly passed and
signed, and he insisted that his evidence should be received
in spite of the act. This necessarily raised the question of
the constitutionality of the act in the trial court, and the

assignment of error in refusing to admit the evidence raised the same question in this court.

The act in question is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly*: That when the board of trustees of any sanitary district organized and existing under and by virtue of an act entitled, 'An act to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers,' approved May 29, 1889, in force July 1, 1889, has heretofore passed or adopted any order, resolution or ordinance, or any orders, resolutions or ordinances making any appropriations, tax levies, or providing for the issuance of bonds, at any time or times, (one or more times,) and regardless of whether any such order, resolution or ordinance was published within one month after the same was passed by the board of trustees of any such sanitary district at least once in a newspaper of general circulation published in said district, or if no such newspaper of general circulation was published therein, regardless of whether copies of the same were posted in three public places in such district, all such orders, resolutions or ordinances making appropriations, tax levies or providing for the issuance of bonds, and all appropriations so made, or attempted to be made, and all taxes for any purposes not prohibited by or in violation of the constitution of this State so levied or attempted to be levied, and extensions thereof and therefor, and all bonds so issued or attempted to be issued by the board of trustees of any such sanitary district shall be and are hereby declared to be legal and valid, anything in any law of this State to the contrary notwithstanding: *Provided, however,* that nothing in this act shall apply to or affect the tax levy ordinance passed or adopted by the board of trustees of any such sanitary district providing for the levy and extension of taxes for the year 1915.

"Sec. 2. Whereas, an emergency exists, therefore this act shall be in full force and effect from and after its passage."

The objection to this act is based upon the proviso excepting the levy of 1915 from its operation, and is that the act does not operate equally upon all persons in the same situation but is discriminatory and based upon an arbitrary classification. There can be no question of the power of the legislature to pass an act curing defects in the levy of taxes or other official act when the defect consists in the failure to observe some requirement of the law without which the legislature might have authorized the act to be done. (*People* v. *Wisconsin Central Railroad Co.* 219 Ill. 94; *People* v. *Militzer*, 272 id. 387; *People* v. *Madison*, 280 id. 96; *People* v. *Stitt*, id. 553.) Such legislation is, however, subject to the constitutional limitation which declares that no person shall be deprived of life, liberty or property without due process of law. This requires general laws operating equally on all persons in the same situation, and not partial or special laws affecting the rights of particular individuals or classes of persons arbitrarily selected. The act in question complies with this requirement. The taxes levied by the sanitary district in 1915 had been objected to by a great many tax-payers, and in *People* v. *Day*, 277 Ill. 543, and other cases at the February and April terms, 1917, these objections had been sustained. By stipulation a very large number of cases in which judgments had been rendered but appeals had not been prosecuted were to abide the result of those cases in which appeals had been taken. In consequence a large amount of taxes had been lost to the sanitary district. In the meantime the levy of 1916 had been made, and the taxes which were in process of collection in the spring of 1917 were subject to the same objections as were made to the taxes of the previous year. In view of this situation the legislature passed the act of May 3, 1917, to prevent the loss of the taxes of 1916, as

282 – 17

those of 1915 had been lost to the district. In *Chicago and Eastern Illinois Railroad Co.* v. *People,* 219 Ill. 408, it had been held that where the Supreme Court had held a particular tax levy invalid the legislature was without power afterward to validate the levy and make the tax collectible. Therefore, the legislature did not attempt to validate the tax levy which had been adjudicated to be invalid, but, leaving all persons affected by it in the situation in which the law placed them, undertook only to validate other tax levies as to which the conditions were different. This distinction was a just reason for omitting the tax levy of 1915 while validating those of other years. The act makes no distinction between individuals, but applies equally to all persons in the same situation and operates upon all tax-payers alike.

It is contended on behalf of the appellant that the act, if valid, is so only to the extent of curing the failure to publish the annual ordinance, and that if it is so broad as to attempt to cure all defects, it is invalid because it includes matters of substance, which are beyond the power of the legislature, as well as formal defects, and as these matters cannot be separated the whole act must fall. If it be conceded that the act attempts to cure matters of substance, as to which it is invalid, as well as matters of form, which the legislature may cure, yet we have held that a statute may be in part constitutional and in part unconstitutional, and that in such cases the constitutional part will be given effect and the unconstitutional part disregarded, unless the unconstitutional part is of such a character that it may be inferred that without it the legislature would not have passed the act. The law, so far as it is within the constitutional limitations upon the legislative power, will be given full effect though void so far as it exceeds such limitations. (*Scown* v. *Czarnecki,* 264 Ill. 305.) The act is general in its language and applies to all orders, resolutions, ordinances, appropriations, tax levies and taxes within its terms, so far as not prohibited by or in violation of the constitution of

the State, and to this extent it is valid. The fact that it states that such orders, resolutions and ordinances are declared to be legal and valid, regardless of whether they were published within one month of their passage, does not limit the general language to that one circumstance. While the levy was held invalid in the *Day case* because of the failure to publish the ordinance, that was not the only objection urged against it, and it cannot be assumed that the legislature, in attempting to validate the next year's levy, intended to cure only this one defect, leaving the levy still vulnerable to other objections which had been made but not adjudicated. On the contrary, the presumption is that the legislative intention was to validate the tax against all objections to the extent of the legislative power. The title of the act was sufficiently comprehensive to include all the taxes mentioned in the body of the act. The subject of the act as expressed in the title was "to make legal and valid all ordinances, orders or resolutions heretofore passed or adopted by the board of trustees of any such sanitary district, making appropriations providing for the issuance of bonds and making a certain tax levy, and to make legal and valid all appropriations so made, or attempted to be made, and certain taxes so levied or attempted to be levied," etc. The "certain taxes so levied or attempted to be levied" were the specific taxes mentioned in the body of the act; that is, all taxes levied or attempted to be levied by any order, resolution or ordinance passed or adopted before the passage of the curative act. The act cured whatever defects may have existed in the levy of the tax so far as the objections of the appellant are concerned.

Judgment was rendered in August, 1917, and in accordance with the statute the penalty of one per cent a month, beginning May 1, was included in the judgment. The appellant contends that the one per cent for August should not have been added because the hearing of evidence was concluded before August 1 and the judge who tried the case

pledged himself not to add the penalty for August, and thereby induced the appellant's counsel to waive argument until the court had been able to hear the evidence in all cases. The statement of this proposition is its own sufficient answer. The statute fixes the penalty and the court has no power to waive it.

The judgment will be affirmed except as to the Cook county tax, and as to that it will be reversed and the cause will be remanded.        *Reversed in part and remanded.*