(No. 22843.)

THE PEOPLE *ex rel.* Thomas D. Nash, County Collector, Appellee, *vs.* THE WESTMINSTER BUILDING CORPORATION, Appellant.

*Opinion filed June 14, 1935—Rehearing denied October 4, 1935.*

ROBERT N. HOLT, for appellant.

THOMAS J. COURTNEY, State's Attorney, JAMES M. SLATTERY, and ELMER J. WHITTY, (KIRKLAND, FLEMING, GREEN & MARTIN, HAYDEN N. BELL, LAWRENCE J. FEN-LON, JOSEPH B. FLEMING, and JOSEPH H. PLECK, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The Westminster Building Corporation filed objections in the county court of Cook county to an application of the county collector for a judgment against and an order for the sale of its land because of the non-payment of certain taxes levied by the South Park Commissioners and the Sanitary District of Chicago. These objections were overruled and judgment was rendered for the taxes found to be delinquent and for sale of the land. The tax-payer prosecutes an appeal.

The South Park Commissioners adopted their 1932 tax levy ordinance on July 15, 1932, and certified it to the county clerk on the 21st day of July. The assessed valuation of all property in the park district for the fiscal year 1932 was $1,169,290,879. The amount levied for bonds and interest was $8,117,971. Of this sum $369,800 was levied for bonds authorized but not sold, and interest thereon, as follows:

| Issue | Principal | Interest | Maturity |
|-------|-----------|----------|----------|
| Chicago river bridge and approach . . . . . . . . . . . | $6,000 | $4,320 | March 15, 1934 |
| Yates avenue . . . . . . . . . | 80,000 | 57,600 | Aug. & Oct. 1, 1934 |
| Southeastern boulevard. | 100,000 | 72,000 | Aug. & Oct. 1, 1934 |
| Park improvement. . . . . . | 25,000 | 18,000 | October 1, 1934 |
| Street improvement. . . . . | 4,000 | 2,880 | October 1, 1934 |
| | $215,000 | $154,800 | |

Levies for principal and interest on the unsold bonds of the same issues for 1930 amounted to $215,000 and $251,420, respectively, and for the year 1931, $215,000 and $83,980 each. The amounts levied for interest for the years 1930 and 1931 were abated from the 1931 and 1932 levies, respectively. In addition, one-half of the interest on the unsold Chicago river bridge and approach bonds

levied for 1932 was also abated. Although an ordinance of the South Park Commissioners adopted on January 12, 1934, abated the amount of interest levied in 1931 which had accrued prior to the day named, it made no abatement of any amount levied for principal. The county clerk did not extend the 1932 taxes until some time between February 10 and March 10, 1934. The 1932 taxes levied for unsold bonds went into collection on July 1, 1934, and at the time the objections were filed approximately sixty per cent of the entire tax had been paid by non-objecting taxpayers. All of the unsold bonds for which taxes were levied in 1930, 1931 and 1932 and maturing on or before October 1, 1934, aggregating $645,000, were canceled at or shortly after their respective maturity dates. On October 23, 1934, the commissioners of the Chicago Park District, successors to the South Park Commissioners, passed a resolution authorizing the county clerk to abate from the 1933 taxes of the South Park Commissioners (1) the entire amount of principal and interest levied for unsold bonds in the 1933 levy; (2) an amount equivalent to all of the principal of the 1932 levy for unsold bonds; and (3) an amount equivalent to all of the principal of the unsold bonds included in the 1930 and 1931 levies, exclusive of the amount spent on the projects for which the bonds were authorized. A copy of this resolution was filed with the county clerk, who acted thereon and abated from the 1933 levy the amounts mentioned prior to the entry of judgment herein. It was stipulated that the abatement resolution was not to be construed as an admission that the unsold bonds are void, or that the respective projects had been abandoned, or that the purpose of the tax levy had failed. From the evidence it further appears that subsequent to the adoption of the 1932 levy ordinance, and prior to the adoption of the abating ordinance, the ownership of the real estate described in the objection changed hands. Judgment was entered on November 12, 1934.

On November 2, 1926, the voters of the South Park District approved a bond issue for $5,000,000 for the construction of a boulevard and thoroughfare, with a suitable bridge across the Chicago river and southern approaches thereto, connecting thoroughfares on the east side of Lincoln and Grant Parks. By September 16, 1931, bonds having a par value of $4,880,000 had been sold for the sum of $4,618,220. Acceptable bids were not received for the remaining $120,000 bonds. Expenditures on this improvement and the contract liabilities amounted to $1,000,000. No part of the Yates avenue bond issue of $1,600,000, approved February 24, 1931, has been sold. Prior to May, 1929, $6992.43 was expended upon this improvement for engineering work and survey. On August 1, 1934, $1488.61 was authorized for traffic signals at Seventy-first street. Both of these sums were charged against the proceeds of the bond levy. No part of the Southeastern boulevard issue of $2,000,000, authorized by popular vote on the same day, has been sold. Expenditures of $6526.56 for engineering charges and survey were made on the improvement prior to May 1, 1929. Between that day and August 1, 1934, $23,102.52 was spent for like purposes, $1475.40 for outside services and materials, $17,630.47 for the installation of traffic signals and stop signs and $18,663.89 for additional expenditures, bringing the total to $67,398.84. Nor has any part of the park improvement bond issue of $1,915,000, approved February 24, 1931, been sold. The books of the South Park Commissioners disclose that the sum of approximately $100,000 expended for the construction of a field house in Mann Park was charged against the taxes levied for the bonds. The street improvement bonds were authorized under a general statute authorizing issuance of certain bonds without a referendum. By an ordinance adopted September 16, 1931, the issuance of $80,000 of bonds was authorized, being the ninth series for this purpose. The books of the

commissioners do not show any work done on contracts directly chargeable to the proceeds of the sale of these bonds. There is a balance of about $90,000 in this fund, derived from the sale of the preceding series of bonds and taxes levied for the unsold bonds. The amount which the South Park Commissioners may spend in any year for improving streets or paving under general authority varied from nothing to $500,000.

With the exception of the park improvement bonds, no contracts are outstanding which are chargeable against the proceeds of the tax levies for the bonds previously described. The money received from the collection of taxes for the unsold bonds which has not been spent upon the respective projects for which the bonds were to be sold has been placed in the various accounts set up for each project and has not been expended for any other purpose. Moneys received from the taxes levied for the unsold Chicago river bridge and approach bonds are carried on the books of the South Park Commissioners as "Chicago river bridge and approach fund." In like manner the proceeds of the levies for the Yates avenue bonds are carried on the books as "Yates avenue improvement fund."

The chief accountant of the South Park District testified that the failure to sell the bonds in question was due largely to the inability to obtain a satisfactory price for them sufficient to complete the various improvements and do the work contemplated. He added that a satisfactory market for the bonds now obtains, but that their sale is held up pending the determination of certain legal questions arising out of the merger of the various park districts, including the South Park District, into the Chicago Park District.

The objector claims that the taxes extended for the unsold bonds were illegal because (1) the South Park Commissioners lacked power to make levies for the bonds beyond the maximum rate allowed by law for corporate pur-

poses; (2) they abused their discretion (*a*) in levying for unsold bonds for the year 1932 when the 1930 and 1931 levies were more than sufficient to meet the maturities and interest requirements in the event the bonds should be sold prior to the collection of the 1933 taxes, and (*b*) in refusing to make an abatement of the levy for the principal of the bonds; and (3) the authority of the South Park Commissioners to issue and sell these bonds terminated upon the appointment of commissioners of the Chicago Park District, and that, therefore, the purpose of the levy for the bonds failed.

Section 12 of article 9 of the constitution requires any county, city, school district or other municipal corporation incurring any indebtedness, before or at the time of doing so, to provide for the collection of a direct annual tax sufficient to pay interest on the debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. This constitutional provision is mandatory and self-executing. It contemplates not only the levy of taxes sufficient to meet the interest and principal payments on bonds but likewise requires the collection of taxes in such amounts. (*People* v. *New York Central Railroad Co.* 355 Ill. 80; *Gates* v. *Sweitzer,* 347 id. 353.) Taxing authorities have the right to, and should, anticipate, as nearly as they can, the amount of money necessary to be raised to meet the costs of operating their political subdivisions and to arrange to have on hand sufficient funds to meet the obligations when due. (*People* v. *Chicago and Northwestern Railway Co.* 331 Ill. 544; *People* v. *Crear,* 300 id. 611.) Courts will not interfere with the exercise of sound business judgment on the part of taxing authorities except to prevent a clear abuse by such officials of their discretionary powers. (*People* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518.) The determination of whether there is such an abuse of discretion as to justify the interference of the

court depends largely on the facts of each case. Taxes are presumed to be just, and the burden rests upon the objector to sustain his objection to a particular tax. (*People* v. *Chicago and Alton Railway Co.* 289 Ill. 282; *People* v. *Sandberg Co.* 277 id. 567.) In levying taxes to meet the requirements of expenditures the amount of money on hand and in the process of collection should be considered. The unnecessary accumulation of money in the public treasury is unjust to the people, and it is against the policy of the law to raise taxes faster than they are likely to be needed. *People* v. *New York, Chicago and St. Louis Railroad Co. supra.*

The county clerk, in extending the tax for principal and interest on the unsold bonds, must obtain his information from the tax levy ordinance and bond ordinances certified and filed in his office. He cannot resort to other information derived from officers or extraneous sources. He has no right to consider information which the South Park Commissioners may have as to the amount of money in the bond fund derived from prior levies, as such information can be used only by the commissioners in making subsequent levies. (*People* v. *Sandberg Co.* 282 Ill. 245.) The evidence discloses that the commissioners of the Chicago Park District did take this information into consideration when it abated from the 1933 levy of the South Park District an amount equivalent to the aggregate amounts previously levied for unsold bonds, less the amounts actually spent on the construction projects. When the 1932 tax levy was made the taxing authorities contemplated that the various improvement bonds maturing in 1934 would be sold and that the taxes levied would be necessary to pay principal and interest. Authority to proceed with the improvements had been granted. Evidence that the municipal authorities, prior to the maturity of the bonds, knew that they would not be sold is wanting. On the contrary, the authorities desired to sell them but could not do

so on account of a stagnant market. The record does not disclose the amount the South Park District had on hand in the bond accounts from the 1930 and 1931 levies at the time of the 1932 levy. All the moneys received by the South Park Commissioners from its levies for unsold bonds, however, were applied to the particular bond funds authorized by the voters or by statute. The taxes represented by the money collected were levied to pay bonds authorized for specific legal purposes. The appellant has failed to show an abuse of the commissioners' discretionary powers. The fact that the ownership of the property in controversy has changed hands since the adoption of the 1932 levy ordinance is immaterial. There is no evidence to indicate that the prior owner paid the taxes, nor is it proved that the appellant (the present owner) should not receive the benefit of the abatement made on the 1933 taxes.

The objector also contends that the authority of the South Park Commissioners to issue and sell the bonds in question was revoked by the appointment of commissioners of the new Chicago Park District, and that, in consequence, the bonds are void. To sustain this contention it places reliance upon *People* v. *Kelly,* 357 Ill. 408. The construction placed by the appellant on certain language used in that opinion is unwarranted. We held that the act creating the Chicago Park District did not authorize its commissioners to create a new indebtedness with respect to the unsold bonds in the treasuries of the constituent park districts. "A reasonable construction of the act," we said, "is that the authority granted to the new commissioners respecting the unsold bonds is that such bonds may be issued by them for the sole purpose of funding existing open indebtedness and refunding existing bonded indebtedness, where such open and bonded indebtedness has already been incurred by the respective authorities of the superseded park districts." There is nothing in the opinion in *People* v. *Kelly* which conflicts with the established rule that the va-

lidity of a tax and the rate authorized are to be determined as of the time the tax is levied. *People* v. *Wabash Railway Co.* 344 Ill. 606; *People* v. *Chicago and Northwestern Railway Co.* 340 id. 102; *People* v. *Cook,* 336 id. 330.

The appellant further argues that one purpose of the controverted levy is to increase the money available for corporate purposes, thereby effecting a diversion of the taxes from the purposes designated in the levy. Its argument is, that since the interest and principal installments were not needed and the tax levied cannot be used for these purposes the money must have been intended for general corporate purposes. It is also pointed out that the tax levied for corporate purposes was the maximum rate permitted by law. A claimed purpose to divert or misappropriate the fund, when collected, affords no ground for sustaining an objection to the tax. After the tax is collected, equity will, at the suit of the tax-payer, intervene to prevent a misappropriation of the fund. (*Gates* v. *Sweitzer, supra; People* v. *Hassler,* 262 Ill. 133.) The objections to the South Park taxes were properly overruled.

As to the Sanitary District of Chicago taxes, objections were filed to levies for 1932 for a series of bonds Nos. 82, 83, 84 and 85 because they had never been sold and the levies had not been abated, and for the further reason that levies were made for the same series of bonds for the year 1931 which were then in process of collection and because the surplus created was more than was needed for the purpose of the tax.

The property of the objector is within the Sanitary District of Chicago. The assessed value of the lands of the district for the year 1932 was $2,877,336,389. In its tax levy ordinance for that year, adopted January 28, 1932, the sanitary district levied for principal and interest due on the series of bonds above mentioned maturing April 1, 1934, none of which were sold, the sum of $1,429,725. The total taxes of the district for that year for bonds and

interest amounted to $14,598,765. All of these bonds were for the same general purpose as series Nos. 82, 83, 84 and 85, namely, paying the cost of construction and enlargement of the sewage treatment works and additions thereto, pumping stations, conduits, tunnels and intercepting sewers connecting therewith and equipment and appurtenances necessary thereto. From that levy the sanitary district has received from the county collector the sum of $7,964,681.68, out of which there has been disbursed for principal and interest on bonds which were sold, $7,635,516.42, leaving a cash balance of $329,165.26.

The Sanitary District of Chicago made a levy for 1931 for bonds and interest, $15,263,548.75. In this levy there was included $953,000 principal for the series of bonds above mentioned and interest $1,232,347.50. Of the entire amount levied $9,465,776.11 has been collected. In order to prevent a default in the payment of bonds and interest included in the tax levy of 1930, there having been no default to that time, and to preserve its credit, the sanitary district issued tax anticipation warrants against the 1931 levy, and paid bonds which should have been collected from the 1930 levy but which were not paid out of the taxes because of insufficient collection. The proceeds from the 1931 levy were applied in part to the retirement of the tax anticipation warrants and in part to maturing bonds and interest. The sanitary district was in default on its bonded indebtedness for the maturities of bonds and interest provided for in the 1931 levy in the sum of $6,747,615. The cash on hand from the 1931 tax levy at the time of the judgment herein was $171,407.36. Because of lack of funds to pay bonds upon their maturity the sanitary district is in default on its bonded indebtedness for maturities of bonds provided for in the 1932 levy in an amount aggregating approximately $3,893,130. Copies of the bond ordinances in each instance were filed with the county clerk. He extended the maximum rate allowed by law for general

corporate purposes in 1932. The 1931 and 1932 levies of the district were based upon both the bond and tax levy ordinances, between which there is no conflict.

It is contended by counsel for objector that the trustees of the Sanitary District of Chicago abused their discretion in levying a tax in 1932 for unsold bonds when the 1931 tax levy was ample, and that the levies for unsold bonds prior to the extension of the 1932 taxes should have been abated. The answer to that is, the levies were valid when made. There was no attempted evasion of the tax rate limit for corporate purposes. There is no evidence of bad faith in the subsequent action of the trustees of the sanitary district, and the taxes were properly levied. The principles of law heretofore stated with respect to the objections to taxes for unsold bonds of the South Park District apply to the objections to the taxes for unsold bonds of the Sanitary District of Chicago.

At the time of the tax levy to which objection is made there was nothing to indicate that the bonds would not be sold before their maturity. The Sanitary District of Chicago was in default on its bonded indebtedness and there was no evidence of any intention on the part of the trustees merely to accumulate a large fund which might be available for some uncertain purpose to be determined at some time in the future. The bond issues were for authorized improvements of a general and extensive character. Municipal officers have no right to divert money from one fund to another and different fund for which it was not appropriated, but it is not an unlawful diversion to temporarily borrow from one fund sufficient idle money for the benefit of another fund having a stated and sufficient income to re-pay the sum borrowed, as the former fund is not in such case depleted. *Gates* v. *Sweitzer, supra.*

Our views on all other questions involving the validity of the sanitary district taxes have been disposed of in this

opinion relating to the taxes for the South Park District. The objections to the sanitary district taxes were also properly overruled.

The judgment of the county court is affirmed.

*Judgment affirmed.*