(No. 38913.—

THE PEOPLE *ex rel.* BERNARD J. KORZEN, County Collector, Appellee, *vs.* VICTOR E. ENGLEMANN, Appellant.

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

SPRAY, PRICE, TOWNSEND & CUSHMAN, and HOLT & KEARNEY, of Chicago, (ROBERT S. CUSHMAN and MINARD E. HULSE, JR., of counsel,) for appellant.

DANIEL P. WARD, State's Attorney, JAMES W. COFFEY, DAVID S. KERWIN, and KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, all of Chicago, (EDWARD J. HLADIS and THEODORE H. SWAIN, Assistant State's Attorneys, and THOMAS M. THOMAS and THOMAS F. SCULLY, of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Victor E. Engelmann, a taxpayer, here appeals from a judgment of the circuit court of Cook County, County Division, overruling three objections to 1960 taxes of the Board of Education of the City of Chicago and two objections to 1960 taxes of the Chicago Park District.

The first objection to the Board of Education's levy involves its educational fund. It is charged that the appropriation in that fund for "Provision for Teachers' Sick Leave —Accrued—$3,730,243.67", which is stated to be an estimated current liability as of January 1, 1960, is illegal, objector asserting that there was no such liability. It is alternately charged that if there was such a liability it was not properly itemized under the applicable statutory requirements.

By statute (Ill. Rev. Stat. 1959, chap. 122, par. 34—49) the Board of Education budget is required to include

appropriations for all estimated liabilities incurred during prior years and unpaid at the beginning of the fiscal year.

Section 22—6 of the School Code (Ill. Rev. Stat. 1959, chap. 122, par. 22—6) requires all school districts in the State to grant their full-time teachers sick leave of not less than ten days at full pay in each school year. It is also provided that "If any such teacher or employee does not use the full amount of annual leave thus allowed, the unused amount shall accumulate to a minimum available leave of thirty days at full pay, including the leave of the current year."

Pursuant to this provision, the Board of Education allows twelve days per year of sick leave at full pay, and its rules provide that the unused amount thereof shall accumulate to a maximum of one hundred and twenty days. The record shows that on January 1, 1960, the Board of Education employed more than 18,000 teachers who had accumulated and were entitled to take 390,433 days of sick leave at full pay, representing a total of $9,893,981. The Board of Education estimated that some of this leave would expire unused, resulting in a reduction in the amount of the estimated liability to $3,730,243.67.

The Board of Education's 1960 budget also contained an appropriation in the amount of $135,748,396 for regular teachers' salaries to be paid during the year 1960. The record shows that when a teacher takes some of his accrued sick leave the full pay to which that teacher is entitled is paid out of the current appropriation. It is also shown that where a substitute teacher is hired to take the place of such an absent teacher, the substitute's pay is charged against the liability for the accrued sick leave of the absent teacher.

It is clear that there was a liability on January 1, 1960, that the statute required the Board of Education to appropriate for. We in effect so held in *People ex rel. Brenza* v. *Morrison Hotel Corp.* 4 Ill.2d 542, 551-2. The record

shows that during the year 1960 the Board of Education in fact had to expend $3,194,195 on account of accrued sick leaves that were taken during that year. Had the Board of Education not appropriated for that liability, it is obvious that its operations would have been very seriously curtailed.

Objector argues, however, that the Board, instead of appropriating $3,730,243.67 as an accrued liability, should have made a current appropriation in the same amount for "substitute teachers." Not only is that a case of a distinction without a difference in legal consequence, but the statute must necessarily control on the question of where in the budget the item is properly placed. As already noted, the statute required an appropriation for all liabilities existing at the beginning of the fiscal year. This was such an item. The obligation was for sick leaves that had been accrued and not taken. It was not an obligation to be incurred, but one that had already accrued.

Objector concedes that the liabilities required to be appropriated for under the statute include both contingent as well as absolute liabilities, and unliquidated as well as liquidated liabilities. His claim that no liability is involved in this instance, however, rests on the argument that no money was due and owing to any identifiable person or persons as of January 1, 1960, all regular and substitute teachers having been paid in full for their services to that date. He cites Webster's second definition of liability as "That which one is under obligation to pay, or for which one is liable" (Webster's International Dictionary, 2d ed., Unabridged), and argues that "obligation to pay" implies that two identifiable parties must therefore be involved— one who has the duty to pay and one who is entitled to be paid. But Webster's *first* definition is the "State or quality of being liable; as, the *liability* of an insurer." Clearly, in the case of many of the contingent liabilities of an insurer, the ones who are entitled to be paid are not known. More precisely, an accrued liability "represents a portion of an

amount which will eventually be due but which is not due at the date of the balance sheet." (Bell and Johns, Auditing, 3rd ed., chap. 14, p. 301, Prentice-Hall, 1952.) In the instant case, as of January 1, 1960, an amount would eventually be due, although not due on that date, because of leaves that had been earned and accrued but had not yet been taken. Similarly, "it is a well established principle that provision for an expense which will have to be paid, even though the amount may not be determined, is a liability rather than a reserve." (Bell, Accounting, 4th ed., p. 15, Ronald Press, 1949.) There can be no doubt that "Provision for Teachers' Sick Leave—Accrued" is a provision for an expense which will have to be paid on account of sick leave accrued prior to January 1, 1960.

Objector asks to whom the Board owed an obligation as of January 1, 1960, on account of accrued sick leave, and he argues that the Board could not be under any obligation to substitute teachers that would be required during the year 1960 but had not yet been hired. However, the fact cannot be denied that prior to January 1, 1960, teachers had earned and there was accrued on the books of the Board sick leaves totalling $9,893,981. That was the result of something that had happened prior to January 1, 1960; not something that would occur thereafter. The contingency involved was as to when the already earned and accrued sick leave would be taken. The Board clearly had the continuing obligation to provide for the day when the leave that had been earned would be taken. When it in fact was taken, there is no question that the Board would be compelled to hire substitutes to take the place of those teachers absent on leave earned in prior years. Past experience showed that that contingent obligation would become absolute during the year 1960 in the estimated amount of $3,730,243.67. As already observed, the actual amount that had to be disbursed during the year 1960 on account of this contingency was $3,194,195. This was the result of

events that had occurred in 1959 and prior years, and was therefore properly reflected as an obligation as of January 1, 1960.

As to the objector's alternate contention that the appropriation is not properly described, it too is without merit. The liability is on account of accrued or accumulated sick leave, and it was so described in the budget. That the charges against it are for the pay of substitute teachers in no way misleads any taxpayer to his detriment. We have held that liabilities described as "accounts payable" that include "cost of sick leaves" are adequately described. (*People ex rel. Brenza* v. *Morrison Hotel Corp.*, 4 Ill.2d 542, 552.) That the actual amount involved in the liability for accumulated sick leave is separately stated rather than lumped into an item merely described as "accounts payable" is to the advantage of the taxpayer, not to his prejudice. Objector has argued that the governing statute (Ill. Rev. Stat. 1959, chap. 122, par. 34—49) requires that appropriations for expenditures to be made during the current fiscal year must identify the organization unit, purpose or object. The statute makes no such requirement in regard to liabilities accrued and unpaid, and in any event there can be no ambiguity with respect to a liability stated to be for accrued sick leave. On its face it is apparent that the item represents the Board's best estimate of moneys that must be paid out because sick leaves have been accumulated and will be taken.

The second objection to the Board's 1960 budget is that appropriations for fuel, totalling $1,866,225, were charged to the building fund rather than to the educational fund. This was in express compliance with the applicable statute. (Ill. Rev. Stat. 1959, chap. 122, par. 34—57.) Objector urges that that section of the statute is unconstitutional as special legislation, in violation of section 22 of article IV of our constitution. The argument, in which we find no merit, is that some school districts must charge fuel to the

educational fund while school districts having a population of more than 500,000 inhabitants, Chicago being the only one in that category, must charge fuel to the building fund. We note that some school districts must charge the pay of janitors and the cost of insurance to the building fund, but the Board of Education of the City of Chicago cannot. (Ill. Rev. Stat. 1959, chap. 122, pars. 17—6 and 34—57.) We do not feel that any "special privilege", within the parlance of section 22 of article IV, is involved in any of these situations. Obviously, all school districts must heat their school houses, pay their janitors, and insure against the possibility of their properties being damaged or destroyed. Obviously, the taxpayers must bear the burden of the expenditures required for such purposes. That being the case, it is clearly for the legislative branch to determine the method by which any school district must appropriate and account for such expenditure items. As we said in *People ex rel. Lindheimer* v. *Hamilton,* 373 Ill. 124, 130, the law with reference to school budgets is "for the purpose of requiring school taxes levied for a definite purpose to be applied to that purpose." That purpose is met by the appropriation and the statutory provision challenged here. We therefore hold that section 34—57 of the School Code is constitutional and does not violate section 22 of article IV of the constitution.

Objector also challenges the legality of appropriations in the budgets of both the Board of Education and the Chicago Park District for the loss and cost of collecting levies for the principal of and interest on numerous bond issues of those municipalities. It appears that as of January 1, 1960, the Board of Education had outstanding eleven different bond issues, with total outstanding principal and interest requirements of more than $213,000,000, and the Chicago Park District had outstanding fourteen issues, with total principal and interest requirements of more than $75,000,000. Each of those 25 bond issues involved differ-

ent maturity dates, interest requirements, sinking fund requirements, and consequently different tax levy requirements.

It was stipulated that there were nontax revenues received by these bond funds resulting from the sale of bonds at a premium, investment of sinking fund assets in interest bearing securities, and the like. It appears that in 1959 the Board's bond funds in the aggregate received some $390,700 from such sources, and $770,000 in 1960. The Park District similarly received $728,163 in 1959 and $733,153 in 1960. It is the objector's position that the anticipated receipt of such funds should have been used to reduce or eliminate the appropriations for loss and cost of collection of the 25 levies for principal and interest that were made. Objector does not challenge the amount of the levies for principal and interest, and concedes that the municipalities' estimates of the amount of costs and losses were reasonable and proper. His only point is that the costs of collecting the levies and the losses in collection of the levies would be offset by these miscellaneous sources of nontax revenue, and that the taxing bodies should therefore have reduced or eliminated their allowances for loss and cost.

Resort to well established and fundamental principles supplies a complete answer to objector. Section 12 of article IX of our constitution requires municipalities issuing bonds to provide at the time of issuance for the levy of a direct annual tax sufficient to pay the principal and interest thereon within 20 years. That provision is mandatory and self-executing and requires not only the levy but the collection of sufficient funds to meet the requirements of each issue separately as they fall due. (*People ex rel. Nash* v. *Westminster Bldg. Corp.* 361 Ill. 153, 159; *People ex rel. Mc-Donough* v. *New York Central Railroad Co.* 355 Ill. 80, 91; *Gates* v. *Sweitzer,* 347 Ill. 353, 359.) No statute can override this constitutional mandate. *People ex rel. Gill* v. *110 South Dearborn Street Corp.,* 363 Ill. 286, 290.

In upholding a levy for bonds and interest against a taxpayer's objection that the levy was excessive, we observed in *People ex rel. Gill v. 110 South Dearborn Street Corp.*, 363 Ill. 286, 289-291:

"Section 12 of article 9 of the constitution provides, in part, as follows: 'Any * * * municipal corporation incurring any indebtedness as aforesaid, shall before, or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same.' We have heretofore held that said section 12 contemplates not only the levy of taxes sufficient to meet the payment of principal and interest on municipal bonds but likewise the collection thereof in such amounts, and that these constitutional provisions are mandatory and self-executing. (*People v. Westminster Building Corp.*, 361 Ill. 153; *People v. New York Central Railroad Co.* 355 *id.* 80; *Gates v. Sweitzer*, 347 *id.* 353.) Taxes are presumed to be just and the burden rests upon the objector to sustain his objections to a particular tax. *People v. Chicago and Alton Railway Co.* 289 Ill. 282; *People v. Sandberg Co.* 227 *id.* 567; *People v. Westminster Building Corp. supra.*

"Taxing authorities should, with reasonable accuracy, anticipate the amount of money necessary to be raised to meet the cost of operating their political subdivision and arrange to have on hand sufficient funds to meet the obligations thereof as they mature. (*People v. Westminster Building Corp. supra; People v. Crear*, 300 Ill. 611; *People v. Chicago and Northwestern Railway Co.* 331 *id.* 544.) Courts will not interfere with the exercise of sound business judgment on the part of taxing authorities but will intervene only to prevent a clear abuse by such officers of their discretionary powers. *People v. Baltimore and Ohio Southwestern Railway Co.* 353 Ill. 492; *People v. Westminster Building Corp. supra.*

"Revenue statutes must be given a reasonable construction and no statute can override the positive provisions of section 12 of article 9 of the constitution making it the duty of a municipal corporation to provide for the payment of its bonded indebtedness and interest as the same fall due. (*People* v. *Day,* 277 Ill. 543; *Mathews* v. *City of Chicago,* 342 *id.* 120; *People* v. *Scott,* 300 *id.* 290; *People* v. *Louisville and Nashville Railroad Co.* 300 *id.* 312; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 *id.* 33.) * * * It was their duty to exercise sound business judgment in anticipating the immediate financial requirements of the district as well as to be fortified against the day when the financial demands against the district accruing within the near future should be met. The constitution cast upon them the burden of levying taxes to meet the bonds and interest as they became due. In that exigency they were required to exercise their business acumen. As a matter of law the trustees had the power to make the levy in question, and unless we can say they have abused their discretion in that respect their acts should not be disturbed."

In *People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565, 592-3, we dealt with an objection to levies for bonds and interest quite comparable to those involved here. There it also appeared that funds had been accumulated in bond sinking funds of the Sanitary District of Chicago from sources other than previous net tax levies. The objector argued that the levies involved were excessive to that extent. Overruling the objection, we said: "First of all, we presume that had the legislature intended the levies to be abated by amounts of premiums, interest or unexpected tax collections they would have so provided. Second, if the district were required to abate each year for the full amount of such items, the net result would be that each fund would show a net balance of zero for each year. Such a method in the face of the reality that tax collections are uncertain from year to year, would not, in our judgment, constitute a sound busi-

ness practice. It would appear, rather, that the question of whether the district should, in any given year, abate its levies by the amounts from sources other than the purchase and cancellation of bonds is one which must be left to the sound discretion of the taxing authority and its judgment considered final except where an arbitrary abuse of discretion is shown. There is no such showing in this case and we conclude that the objection was properly overruled."

Clearly then the question on this phase of the case is whether the loss and cost levies objected to will result in a needless accumulation of funds that can be said to involve an arbitrary abuse of discretion by the corporate authorities of the Chicago Park District and the Board of Education. No such showing has been made by the objector. He concedes that the levies for principal and interest were proper, and challenges only the amounts added thereto for losses and costs of collection. But as we pointed out in *People ex rel. Gill* v. *Schweitzer,* 366 Ill. 568, 576, "Loss and cost appropriations are merely balancing items for taxes which it is estimated the taxing bodies will not receive."

An examination of the record on this phase of the case clearly negates any contention that there is any unnecessary accumulation in the bond sinking funds before us. In the 11 bond funds of the Board of Education the principal and interest requirements exceed available sinking fund revenues by amounts ranging from approximately $7,500,000 to more than $27,000,000. Taking the 11 funds in the aggregate, not quite $18,000,000 has been accumulated in the sinking funds, while the outstanding principal and interest requirements exceed $213,000,000. As to the Chicago Park District, the sinking funds of two of its bond issues were sufficient to meet the outstanding principal and interest requirements. In these two cases no levies were extended for principal, interest or loss and cost, the levies having been abated at the direction of the corporate authorities. As to the other 12 bond issues outstanding, principal and

interest requirements exceeded available assets in the respective sinking funds by amounts ranging from more than $300,000 to more than $12,000,000. Taking all of the District's bonds in the aggregrate, outstanding principal and interest requirements exceeded $75,000,000, and sinking fund assets totalled only about $15,000,000. Under such circumstances we are of the opinion that the corporate authorities were within their legal rights and were performing their legal duties in making the levies, and that their actions were not arbitrary.

The remaining objection is directed to the levy for the corporate fund of the Chicago Park District. It is charged that the District illegally underestimated the amount of 1960 taxes available for appropriation and by so doing made the levy excessive.

The gross 1960 corporate fund levy was in the amount of $28,416,165. A reserve was set up against this amount for loss and cost of collection of 8% or $2,273,293. leaving a net levy of $26,142,852. It is the objector's position that this last amount should have been considered available for appropriation in 1960, whereas the District only considered the sum of $25,574,548 as appropriable. That was the maximum amount that the District could have received in 1960 from the sale of tax anticipation warrants and the proceeds of loans from its working cash fund. It was stipulated that the 1960 tax levy would not go into collection until the year 1961 and that no tax collections from the 1960 tax levy would be received by the District during the year 1960.

The controlling statute (Ill. Rev. Stat. 1959, chap. 105, par. 333.17) requires the District's budget to be based upon "a statement of the means of financing the operations of the district, indicating the cash and other current resources to be available at the begining of the next fiscal year and the estimated cash receipts of that year." The District's

budget was in strict compliance with that provision. It could not have estimated cash receipts in 1960 of $26,142,872 from its 1960 levy, as objector urges it should have done. By stipulation, the maximum amount of cash it could have received was $25,574,548, and that was the amount of cash it was estimated would be received and that was made available for appropriation.

The objector argues, however, that the city of Chicago, the Board of Education of the City of Chicago, the county of Cook and the Forest Preserve District of Cook County estimate the amount of current tax levy available for appropriation for the current year as the amount of the gross levy less the allowance they have determined to be proper for loss and cost of collection. The short answer is that none of those municipalities is limited by its controlling statute to the appropriation of cash receipts only. Ill. Rev. Stat. 1961, chap. 24, par. 8—2—2; chap. 34, par. 952; chap. 57½, par. 14a; chap. 122, par. 34—44.

In *People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565, 569, we reviewed a variety of legislative plans for the financing of the necessary expenditures of municipal government. We there observed that:

"In *Mathews* v. *City of Chicago,* 342 Ill. 120, there is found a discussion of the various methods, born of emergency and sound business needs, which have been employed in this jurisdiction to provide funds during the period when the collection of taxes is insufficient to meet the current expenses of municipalities. One method, based upon the principle that it is not necessary for taxing authorities to wait until money is actually needed for paying outstanding obligations before taxes may be levied, has been to permit the authorities to estimate in advance, as nearly as they can, the amount of money that should be raised to meet obligations when they become due, and to thus permit a treasury balance sufficient at all times to meet all current claims upon

it. Another method of bridging the gap between levy and collection of taxes, first established in 1879 (Laws of 1879, p. 78,) is the issue of tax anticipation warrants to the extent of 75 per cent of the total amount of the tax levy. Still another method is the 'working cash fund' plan, which contemplates the creation, by sale of bonds, direct tax levy, or both, of a revolving fund from which money is transferred to particular corporate funds as needed and later returned to the 'working cash fund' when the particular corporate fund is repleted by the collection of taxes. The latter plan, which withstood constitutional attack in the *Mathews case,* permits subsequent taxes to be levied to retire the bonds by which the fund was established.

"What we are confronted with in the present case is still another method designed by the legislature to achieve the purpose of permitting the district to meet its obligations and expenses as they arise. The need and desirability of accomplishing such a purpose is not questioned nor can there be any doubt as to the vital nature and continuing need of the district's functions."

We went on to hold that the budget law for the Sanitary District of Chicago, limiting its expenditure appropriations to the amount that could be raised by the sale of tax anticipation warrants, was not subject to objection. Our reasoning in that case is controlling here.

Objector urges that the statute dealing with the Sanitary District differs from the Chicago Park District Act and that the latter, as interpreted by the District here, will permit the accumulation of unnecessary and surplus funds which the District has no statutory obligation to apply in reduction of taxes. We find no merit in this position. The District's budget must set forth all cash and other resources available at the beginning of the next fiscal year. (Ill. Rev. Stat. 1959, chap. 105, par. 333.17.) Only to the extent that such assets are insufficient to meet necessary expenses is the District permitted to levy taxes.

An examination of the District's 1960 budget does not support the objector's position. It there appears from the estimates of current assets as of January 1, 1960, that the 1959 tax levy was estimated to be 90.5% receivable in 1960, and that after the payment of tax warrants issued in anticipation of that levy and interest thereon, $3,198,240 was available and appropriated for expenditure in 1960, necessarily reducing the amount that would otherwise have to be levied in 1960 by an equal amount. Clearly in the preparation of its 1961 budget the District will similarly have to treat as appropriable any excess in receivables on its 1960 tax levy, over and above its obligations on tax warrants and working cash fund loans. That will be the first time when any moneys will in fact be received by the District on its 1960 tax levy.

This method of financing the District's necessary expenditures works no hardship on the taxpayer, but is, rather, to his advantage. That taxes must be accounted for as it is estimated they will be received results in a more informative and accurate budget. The District budget objector argues for would have shown resources $568,324 in excess of those actually available. Put another way, there would have been appropriations $568,324 in excess of the available means of financing. That result would have been directly in conflict with the statutory provision that "In no event shall the aggregate amounts appropriated exceed the total means of financing." Ill. Rev. Stat. 1959, chap. 105, par. 333.17.

The objections to the taxes for the Board of Education and the Chicago Park District were properly overruled.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*